RENATA ROBERTS, querellante y recurrida, *v.* U.S.O. COUNCIL OF PUERTO RICO ET ALS., querellados y peticionarios.

*Número:* CE-94-730 *Resuelto:* 17 de marzo de 1998

60

*Vanessa I. Rafucci Vázquez, María S. Jiménez Meléndez* y *Ramón Mellado González,* de *Mellado & Mellado Villareal,* abogados de la peticionaria; *Ángel L. Tapia Flores,* de *Tapia & Avilés,* abogado de la parte recurrida.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal.

En el caso de autos, la peticionaria United Service Organizations, Inc. —en adelante U.S.O., Inc.— recurre ante este Tribunal en revisión de una resolución emitida por el antiguo Tribunal Superior, Sala de Humacao, en la que se determinó que dicho foro judicial tenía jurisdicción para entender en la reclamación de salarios presentada por la recurrida Renata Roberts contra U.S.O., Inc., aun cuando los hechos que originaron dicha causa de acción ocurrieron en un enclave federal, esto es, en la Base Naval Roosevelt Roads.

# I

United Service Organizations Council of P.R., Inc. —en adelante U.S.O. Council of P.R., Inc.— es una corporación sin fines de lucro, organizada conforme a las leyes del Estado Libre Asociado de Puerto Rico. Para la fecha en que ocurrieron los hechos en controversia en el caso de autos, sus oficinas estaban localizadas en la Base Naval Roosevelt Roads, en Ceiba, Puerto Rico. *Dicha corporación operaba bajo la autorización y supervisión de la recurrente U.S.O., Inc., la cual es una corporación creada por disposición expresa del Congreso de Estados Unidos.* 36 U.S.C. sec. 1301 *et seq.*

La recurrente U.S.O., Inc. tiene, entre otras, la encomienda de organizar y supervisar la misión de United Service Organizations a nivel mundial de servir y satisfacer las necesidades religiosas, espirituales, sociales, de bienestar, educativas y de entretenimiento de los miembros de las Fuerzas Armadas de Estados Unidos y sus familiares. 36 U.S.C. sec. 1302. Entre los poderes corporativos con que cuenta U.S.O., Inc. están el de establecer, regular y terminar la existencia de consejos, organizaciones, capítulos o afiliados estatales, regionales, locales y de ultramar de la manera que estime conveniente para ejercitar sus poderes y lograr los objetivos de la organización. 36 U.S.C. sec. 1303(b).

Conforme a dichos poderes, U.S.O. Council of P.R., Inc. se incorporó en Puerto Rico. La querellante y recurrida Sra. Renata Roberts laboró durante catorce (14) años para dicha entidad en calidad de Directora Ejecutiva de la misma. El 9 de noviembre de 1989 fue despedida de su empleo. El 20 de noviembre de 1990 Roberts presentó una *reclamación de salarios* ante el entonces Tribunal Superior, Sala de Humacao, contra U.S.O., Inc., U.S.O. Council

of P.R., Inc. y U.S.O. Council of World.[1] Solicitó como compensación, al amparo de nuestra legislación laboral, *la mesada, bono de Navidad y vacaciones acumuladas a la fecha del despido, además de una suma igual al doble del importe de la reclamación instada.*[2]

Oportunamente, U.S.O., Inc. presentó una *moción de desestimación* aduciendo, en síntesis, que el entonces Tribunal Superior, Sala de Humacao, carecía de jurisdicción sobre la materia, puesto que como la reclamación de autos surgió en una base militar estadounidense, los tribunales del Estado Libre Asociado de Puerto Rico no tienen jurisdicción sobre la misma.

El tribunal de instancia declaró *sin lugar* dicha solicitud de desestimación, aduciendo que:

> Si bien es cierto que la Ley de Transacciones con el Gobierno Federal le confiere jurisdicción exclusiva *a las cortes de los Estados Unidos* para intervenir y resolver controversias de hechos acaecidos en territorios cedidos por el gobierno de Puerto Rico a los Estados Unidos, tal norma no es absoluta y la propia ley establece sus excepciones .... La jurisprudencia del Tribunal Supremo también ha reconocido excepciones a la norma general. En *Nolla Galib Cía. vs Tribunal Superior*, 93 DPR 696 (1966), se estableció el precedente de que los tribunales locales tienen jurisdicción para intervenir en controversias de reclamaciones salariales, radicadas por obreros contra sus patronos, en

---

[1] En la petición original, presentada el 20 de noviembre de 1990, únicamente se incluyó como parte querellada a United Service Organizations Council of P.R. (en adelante U.S.O. Council of P.R.). El 31 de julio de 1991, la recurrida presentó una Petición Enmendada en la que se incluyó, además, como parte querellada a U.S.O. Council of World. Posteriormente, el 15 de mayo de 1992 se enmendó nuevamente la Petición para incluir como parte querellada a United Service Organizations, Inc. (en adelante U.S.O., Inc.). Además, resulta necesario notar que aunque en el certificado de incorporación de U.S.O. Council of PR, Inc. se había señalado que la existencia de dicha corporación sería perpetua, el 2 de abril de 1992 se presentó ante el Departamento de Estado un certificado de enmienda en el que se señaló que la referida corporación existiría hasta el 30 de abril de 1992.

[2] La Sra. Renata Roberts presentó su reclamación al amparo de la siguiente legislación laboral: Ley Núm. 289 de 9 de abril de 1946 (29 L.P.R.A. sec. 295 *et seq.*); Ley Núm. 379 de 15 de mayo de 1948 (29 L.P.R.A. sec. 271 *et seq.*); Ley Núm. 77 de 17 de abril de 1952 (29 L.P.R.A. secs. 1–10a); Ley Núm. 96 de 26 de junio de 1956 (29 L.P.R.A. sec. 245 *et seq.*); Ley Núm. 148 de 30 de junio de 1969 (29 L.P.R.A. sec. 501 *et seq.*), y Ley Núm. 80 de 30 de mayo de 1976 (29 L.P.R.A. sec. 185a *et seq.*).

negocios establecidos en las bases militares de los Estados Unidos en Puerto Rico. (Énfasis suplido.)

Inconforme, acudió ante este Tribunal, vía *certiorari*, la querellada U.S.O., Inc. en revisión de la mencionada resolución, imputándole al foro de instancia haber errado al "concluir que tiene jurisdicción para entender en una reclamación de salarios la cual se originó en la base naval de Roosevelt Roads". (Énfasis en el original.) Petición de *certiorari*, pág. 2.

Expedimos el auto de *certiorari* radicado. Estando en posición de resolver la controversia planteada, procedemos a así hacerlo y, aunque por distintos fundamentos, confirmamos la resolución denegatoria de la solicitud de desestimación emitida por el foro de instancia.

## II

Para la correcta solución de la controversia de autos es menester considerar, en primer término, las disposiciones de las Secs. 5 y 6 de la Ley de 16 de febrero de 1903, Leyes de Puerto Rico, págs. 112 y 114, *según originalmente éstas disponían*, titulada "Ley Autorizando al Gobernador de Puerto Rico para Traspasar Ciertos Terrenos á los Estados Unidos para Fines Navales ó Militares y para Otros Fines Públicos".([3]) 1903 Leyes de Puerto Rico 112.

El texto original de las disposiciones pertinentes de la Ley de 16 de febrero de 1903, ante, *establecía*, en lo pertinente, lo siguiente:

Sección 5.—Que se dé y por la presente se d[a], el consentimiento [a] los Estados Unidos para adquirir, para fines navales [o] militares [u] otros fines públicos, por compra [o] expropiación forzosa, cualesquiera terrenos en la Isla de Puerto Rico, y

---

([3]) La Sec. 5 de dicha ley fue derogada y la Sec. 6 fue enmendada, ambas mediante la Ley Núm. 63 de 10 de junio de 1955 (28 L.P.R.A. sec. 46).

Sin embargo, ambas son de aplicación al caso de autos, puesto que los terrenos donde está localizada la Base Roosevelt Roads fueron cedidos al Gobierno de Estados Unidos durante la vigencia de tales secciones de la referida ley.

cuando fuesen adquiridos en esta forma, y los Estados Unidos hayan tomado posesión de los mismos, *toda jurisdicción sobre tales terrenos por parte de "El Pueblo de Puerto Rico" cesará y terminará ipso facto.* Disponiéndose no obstante que, si subsecuentemente los Estados Unidos enajenaren cualquiera [o] todas las tierras adquiridas en esta forma, El Pueblo de Puerto Rico volverá a tener jurisdicción sobre las mismas.

Sección 6.—Que la *jurisdicción exclusiva* sea y es por la presente cedida [a] los Estados Unidos sobre cualquiera y todas las tierras que puedan en adelante adquirir en la Isla de Puerto Rico por compra [o] expropiación forzosa .... (Énfasis suplido.) 1903 Leyes de Puerto Rico 114.

■ Mediante la aprobación por parte de nuestra Asamblea Legislativa de las mencionadas disposiciones de ley, se brindó el consentimiento necesario para que Estados Unidos adquiriera terrenos en nuestra Isla para fines navales, militares y otros fines públicos, y se dispuso que, al así hacerlo, cesaría la jurisdicción de Puerto Rico sobre los mismos. *López v. Corte*, 58 D.P.R. 115, 119 (1941). En *Capitol Construction v. Srio. de Hacienda*, 89 D.P.R. 326 (1963), este Tribunal tomó conocimiento judicial del hecho de que la base naval Roosevelt Roads, lugar en que estaba sita U.S.O. Council of P.R., Inc., fue adquirida por Estados Unidos *antes* del año 1955 y, por consiguiente, la jurisdicción de Puerto Rico sobre ésta cesó desde entonces y corresponde exclusivamente a los Estados Unidos.[4]

En consecuencia, en el presente caso *no* está en controversia el hecho de que Estados Unidos posee jurisdicción exclusiva sobre los terrenos ocupados por la Base Roose-

---

[4] Mediante la Ley Núm. 62 de 10 de junio de 1955 (28 L.P.R.A. sec. 54 *et seq.*) se alteró el esquema anterior, puesto que en lugar de concederse la jurisdicción exclusiva automáticamente a Estados Unidos, una vez éstos la solicitaran, mediante la nueva ley el Estado Libre Asociado de Puerto Rico mantiene jurisdicción sobre dichos terrenos, salvo que la misma sea cedida en la forma prevista por el Art. 2 (28 L.P.R.A. sec. 55); *e.g.* si "el Gobernador del Estado Libre Asociado de Puerto Rico, ... lo creyere conveniente para los mejores intereses del Estado Libre Asociado ... sujeto a las condiciones que se estipulan [en esta ley] y a las demás condiciones que estime convenientes. La jurisdicción sobre tales terrenos por parte del Estado Libre Asociado de Puerto Rico continuará, sin embargo, hasta que el indicado funcionario haya aceptado, en representación de Estados Unidos, la cesión de jurisdicción y haya radicado en la Oficina del Gobernador una notificación a tal efecto". 28 L.P.R.A. sec. 55. Véase, además, XLIV (Núm. 1973-29) Op. Sec. Just. 157 (1973).

velt Roads. Ello no obstante, *nos corresponde determinar cuál es el alcance o el significado de la exclusividad de su jurisdicción.*

## III

Como es sabido, el Art. I, Sec. 8, Cl. 17 de la Constitución de Estados Unidos *no* es de aplicación en Puerto Rico. Dicha disposición constitucional *únicamente aplica a los estados de la Unión.* Así lo resolvimos expresamente en *Moore v. Corte,* 59 D.P.R. 620, 624 (1941). *Ello no obstante,* allí también indicamos que "puede y debe recurrirse a la jurisprudencia interpretativa de la [citada] cláusula constitucional para fijar el alcance de la" Ley de 16 de febrero de 1903, *supra.* De hecho, aun cuando la antes citada Ley de 1903 no siguió estrictamente el lenguaje de la referida cláusula constitucional federal, ambas disponen *sustancialmente* lo mismo. *López v. Corte,* ante.

Dicha cláusula constitucional federal establece, en lo pertinente, que el Congreso de Estados Unidos tendrá facultad, entre otras cosas:

> Para ejercer el *derecho exclusivo a legislar* en todas las materias concernientes a aquel distrito (cuya superficie no excederá de diez millas en cuadro) que, por cesión de algunos estados y aceptación del Congreso, se convirtiere en la sede del Gobierno de los Estados Unidos; *y para ejercer igual autoridad* sobre todas aquellas tierras adquiridas con el consentimiento de la Asamblea Legislativa del estado en que radicaren, con el fin de construir fuertes, almacenes, arsenales, astilleros y otras edificaciones que fueren necesarias .... (Énfasis suplido.) Art. I, Sec. 8, Const. EE.UU., L.P.R.A., Tomo 1, ed. 1988, pág. 174.([5])

---

([5]) El texto en inglés lee de la manera siguiente:

"To exercise *exclusive Legislation* in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States, and *to exercise like Authority* over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings ...." Const. EE. UU., Art. I, Sec. 8, pág. LV.

■ De entrada, notamos que la transcrita disposición constitucional limita la exclusividad de la jurisdicción federal, en cuanto a los terrenos cedidos por los estados al gobierno federal, *a una legislativa y no a una judicial.* Esto es, dicha disposición *no* establece que los tribunales federales son los únicos llamados a entender en reclamaciones surgidas en dichos enclaves federales, en cuyo caso se trataría de jurisdicción exclusiva judicial de los tribunales federales. Lo que sí dispone la mencionada cláusula constitucional es que el Congreso de los Estados Unidos es el único con potestad para legislar sobre dichos enclaves y, en consecuencia, *todo lo que acontezca en los referidos terrenos se regirá por la legislación aprobada por dicho cuerpo congresional.*(⁶) Véanse: *Paul v. United States,* 371 U.S. 245, 263; *Black Hills Power and Light Co. v. Weinberger,* 808 F.2d 665 (8vo Cir.), *cert.* denegado, 484 U.S. 818 (1987).

■ Como es bien sabido, "[e]l término 'Jurisdicción' significa el poder o autoridad de un tribunal para considerar y decidir casos o controversias". *Gearheart v. Haskell,* 87 D.P.R. 57, 67 (1963); *Rodríguez v. Registrador,* 75 D.P.R. 712, 716 (1953). *Hay que mantener presente, sin embargo, que los conceptos de "jurisdicción legislativa" y de "jurisdicción judicial" no son sinónimos, sino que muy por el contrario, son sumamente distintos.*

■ El concepto de "jurisdicción legislativa" se refiere a quién tiene la facultad de regular, mediante legislación, determinada materia, hecho o situación. Esto es, el

---

(⁶) Es preciso, sin embargo, no perder de vista lo indicado por este Tribunal en el escolio número dos (2) del caso de *Gearheart v. Haskell,* 87 D.P.R. 57, 62 esc. 2 (1963):

"... el Tribunal Supremo de Estados Unidos había establecido la doctrina de que cuando el poder legislativo sobre un territorio se transfería de una soberanía a otra, las leyes existentes en la soberanía cedente para la protección de los derechos privados que no fueran inconsistentes con las leyes de la nueva soberanía, continuaban en vigor hasta que fueran derogadas o enmendadas por la nueva soberanía. *Chicago Rock Island & Pacific Ry. Co. v. McGlinn,* 114 U.S. 542. En esta forma se aseguraba que cualquier territorio, por pequeño que fuera, no quedaba sin leyes que regularan los derechos privados."

señalamiento, en la anteriormente citada disposición constitucional, a los efectos de que el Congreso de Estados Unidos tiene jurisdicción exclusiva significa que es el Gobierno federal, y no los estados ni Puerto Rico, el que cuenta con la *facultad de legislar* en los enclaves federales. Véase *López v. Corte*, ante, citando a *Ryan v. State of Washington*, 302 U.S. 186 (1938). En palabras más sencillas, el concepto de jurisdicción legislativa se refiere a "qué ley aplica". *Sopena v. Colejon Corp.*, 920 F. Supp. 259 (D. P.R. 1996). Por otra parte, la "jurisdicción judicial" trata sobre qué tribunal, estatal o federal, está autorizado a entender en determinada controversia, irrespectivo de la ley al amparo de la cual surja la reclamación.

■ La Constitución de Estados Unidos especifica que el Poder Judicial de la Nación reside en un Tribunal Supremo y en aquellos tribunales inferiores que periódicamente el Congreso cree y establezca.[7] Los tribunales creados al amparo del Art. III de dicha Constitución son unos de jurisdicción limitada. Ello significa que únicamente pueden entrar a considerar aquellos aspectos que les fueron delegados en la propia Constitución y aquellos que, por medio de legislación, ha determinado el Congreso de Estados Unidos que habrán de considerar. *Junta Dir. Cond. Montebello v. Fernández*, 136 D.P.R. 223 (1994).[8]

La peticionaria nos plantea y argumenta que los tribunales de Puerto Rico carecen de jurisdicción sobre la materia para entender en el caso de autos; *nada más lejos de la verdad.* Carecer de jurisdicción sobre la materia significa carecer de la autoridad y del poder necesario para enten-

---

[7] Art. III, Sec. 1, Const. EE. UU.

[8] A tenor con el Art. III, Sec. 2 de la Constitución federal, los tribunales federales pueden resolver casos que surjan al amparo de la Constitución o leyes federales; casos relativos a embajadores y otros diplomáticos; casos relativos a asuntos marítimos y de almirantazgo; casos en que Estados Unidos sea parte; casos entre dos (2) o más estados, entre un estado y ciudadanos de otro estado, o entre ciudadanos de distintos estados; casos entre un estado o sus ciudadanos y países o ciudadanos extranjeros.

der en un asunto. *Vázquez v. A.R.Pᴇ.*, 128 D.P.R. 513 (1991).(⁹)

 Por otra parte, y contrario a los tribunales federales, los tribunales de Puerto Rico son unos de jurisdicción general y, salvo contadas excepciones, ni la Constitución federal ni legislación alguna limitan las materias sobre las cuales nuestra Legislatura puede conferirles jurisdicción. De hecho, existe una *presunción* a los efectos de que los tribunales estatales tienen jurisdicción concurrente con los tribunales federales, *en cuanto a casos civiles*, que surjan al amparo de una ley federal. 32A *Am. Juris 2d Federal Courts* Sec. 1069 (1995); *Yellow Freight System, Inc. v. Donnelly*, 494 U.S. 820 (1990).

Así, en ausencia de una determinación congresional expresa relativa a la exclusividad de jurisdicción por parte de los tribunales federales, o ante la existencia de una incompatibilidad insalvable entre la reclamación al amparo de legislación federal, y el hecho de que un tribunal estatal adjudique la controversia, se entiende que la jurisdicción de los primeros es concurrente con los tribunales estatales. *Am. Juris 2d*, ante; *Gulf Offshore Co., Div. of Pool Co. v. Mobil Oil Corp.*, 453 U.S. 473 (1981); *Sopena v. Colejon Corp.*, ante. Tan es así, que para que los tribunales estatales no posean jurisdicción concurrente, el *Congreso de Estados Unidos* tiene que conceder la misma, de manera expresa y exclusiva, a los tribunales federales. *Yellow Freight System, Inc. v. Donnelly*, ante.(¹⁰)

---

(⁹) Hemos resuelto que la ausencia de jurisdicción sobre la materia acarrea las siguientes consecuencias: "(1) [la] falta de jurisdicción no es susceptible de ser subsanada; (2) las partes no pueden voluntariamente otorgarle jurisdicción sobre la materia a un tribunal ni el tribunal puede abrogársela; (3) los dictámenes de un foro sin jurisdicción sobre la materia son nulos ... (4) los tribunales tienen el ineludible deber de auscultar su propia jurisdicción; (5) los tribunales apelativos, además, deberán examinar la jurisdicción del foro de donde procede el recurso, y (6) el planteamiento de falta de jurisdicción sobre la materia puede hacerse en cualquier etapa del procedimiento por cualquiera de las partes o por el tribunal *motu proprio*". (Citas omitidas.) *Vázquez v. A.R.P.E.*, 128 D.P.R. 513, 537 (1991).

(¹⁰) Los tribunales federales poseen jurisdicción exclusiva únicamente con respecto a asuntos de quiebras, patentes y derechos de autor, crímenes federales, asun-

■ Ahora bien, en términos de la disposición de la Constitución federal y de la legislación local que nos ocupa en el caso de autos, es menester resaltar que al ceder jurisdicción al Gobierno federal sobre sus terrenos, los estados y Puerto Rico tienen la facultad de mantener jurisdicción sobre ciertas situaciones. Es decir, los estados pueden reservarse determinadas áreas o controversias sobre las cuales pueden legislar y actuar, aun cuando se trate de enclaves federales. *Fort Leavenworth R.R. Co. v. Lowe*, 114 U.S. 525 (1885); *Arlington Hotel v. Fant*, 278 U.S. 439 (1929); *Paul v. United States*, 371 U.S. 245 (1963).([11])

Así por ejemplo, el Art. 3 de la Ley Núm. 62 de 10 de junio de 1955 (28 L.P.R.A. sec. 56), titulada "Ley [p]ara autorizar al Gobernador de Puerto Rico ceder a Estados Unidos la jurisdicción sobre terrenos adquiridos por éste en el Estado Libre Asociado de Puerto Rico, y para otros fines" (1955 Leyes de Puerto Rico 225) dispone, en lo pertinente, que:

> La jurisdicción se ent[iende] cedida bajo la condición expresa de que dentro de los terrenos adquiridos por Estados Unidos podrán llevarse a cabo arrestos, citaciones y emplazamientos que se originen bajo las leyes del Estado Libre Asociado de Puerto Rico. También podrán llevarse a cabo embargos y otras disposiciones judiciales que determinen los tribunales estaduales con respecto a bienes que radiquen en dichos terrenos, siempre y cuando no se afecten las propiedades de Estados Unidos o

---

tos relativos a prácticas monopolísticas, valores, reclamaciones contra Estados Unidos y ciertos casos de almirantazgo.

([11]) En el normativo caso de *Fort Leavenworth R.R. Co. v. Lowe*, 114 U.S. 525 (1885), el Tribunal Supremo federal señaló lo siguiente: "[t]he reservation which has usually accompanied the consent of the States that civil and criminal process of the State courts may be served in the places purchased, is not considered as interfering in any respect with the supremacy of the United States over them ...".

Igualmente, en *Paul v. United States*, 371 U.S. 245, 265 (1963), el Tribunal Supremo federal señaló específicamente que: "a State may condition its 'consent' upon its retention of jurisdiction over the lands consistent with the federal use". Véase, además, L.H. Tribe, *American Constitutional Law*, 2da ed., Nueva York, Ed. Foundation Press, 1988, Sec. 5-11, pág. 329.

el uso o beneficio que derive Estados Unidos de dichos bienes o los fines para los cuales se adquirieron los terrenos.[12]

 Ello significa que, aun cuando Estados Unidos tiene jurisdicción exclusiva sobre lo que acontece en los enclaves federales situados en Puerto Rico,[13] dicha jurisdicción no es necesariamente absoluta. A esos efectos, Puerto Rico ha legislado y ha determinado que los asuntos relativos a arrestos, citaciones, emplazamientos y embargos, entre otros, que surjan al amparo de leyes locales son de la jurisdicción local.

En resumen, en esta clase de situaciones, la jurisdicción exclusiva de los tribunales federales es la excepción, no la norma. Para que dichos foros tengan jurisdicción exclusiva, se requiere acción y declaración expresa a esos efectos por parte del Congreso de Estados Unidos. En otras palabras, la norma general es a los efectos de que los tribunales estatales tienen jurisdicción concurrente con los federales en la aplicación de las leyes federales. *Dowd Box Co. v. Courtney*, 368 U.S. 502, 507–508 (1962), y casos allí citados.

Resolvemos, en consecuencia, que los tribunales

---

[12] La Sec. 6 de la "Ley autorizando al Gobernador de Puerto Rico para traspasar ciertos terrenos a los Estados Unidos para fines navales o militares y para otros fines públicos", según enmendada por la Ley Núm. 63 de 10 de junio de 1955 (28 L.P.R.A. sec. 46) establece que aun cuando mediante dicha legislación se cede la jurisdicción exclusiva a Estados Unidos sobre las tierras allí mencionadas, Puerto Rico ha retenido "jurisdicción concurrente con los Estados Unidos sobre ofensas y delitos cometidos dentro de los límites de las tierras" cedidas.

[13] Anteriormente hemos expresado que la jurisdicción exclusiva que, en virtud del Art. I, Sec. 8 de la Constitución de Estados Unidos adquiere el Gobierno federal sobre ciertos territorios (en Puerto Rico en virtud de la Ley de 16 de febrero de 1903) excluye el ejercicio del *poder contributivo* del estado, y de Puerto Rico, sobre los terrenos así adquiridos. *P.R. Drydock, Etc. v. Srio. Hacienda*, 82 D.P.R. 658, 662 (1961).

Además, cuando se cometen delitos en enclaves federales, no importa la reserva de jurisdicción realizada por el estado o por Puerto Rico al momento de la cesión de la jurisdicción, Estados Unidos es el encargado de procesar a los sospechosos o acusados. Dicha función únicamente puede llevarse a cabo en los tribunales federales, pues se está procesando al amparo de las leyes federales. Véanse: *People of Puerto Rico v. Koedel*, 927 F.2d 662, 665 (1er Cir. 1991); *Pueblo v. Velázquez*, 45 D.P.R. 905, 911 (1933).

estatales, y en particular los de Puerto Rico, tienen plena jurisdicción para entender en *reclamaciones civiles* que surjan en terrenos federales localizados en nuestra Isla. Véase *Sopena v. Colejon Corp.*, ante.([14])

## IV

Habiendo resuelto que los tribunales de Puerto Rico tienen jurisdicción concurrente para entender en la controversia que plantea el caso de autos y que el derecho aplicable a dicha controversia es el federal, nos resta resolver qué derechos, si algunos, le asisten a la recurrida Renata Roberts bajo el referido esquema.

■ Como es sabido, la Ley Federal de Normas Razonables del Trabajo es una legislación que regula, de manera primordial, el horario de trabajo de los empleados y el salario mínimo por hora a pagarse a éstos. La referida ley *no* incorpora la legislación laboral estatal. Esta última *únicamente* puede ser aplicable en tanto y en cuanto la misma sea más beneficiosa para el trabajador en lo referente a salario mínimo y en cuanto al pago de horas extras. Véanse: 29 U.S.C. sec. 218; *Cosme Nieves v. Deshler*, 786 F.2d 445, 452 (1er Cir. 1986); H.H. Drummonds, *The Sister*

---

([14]) En el mencionado caso de *Sopena v. Colejon Corp.*, 920 F. Supp. 259 (D. P.R. 1996), se instó una reclamación presentada originalmente en el Tribunal de Primera Instancia de Puerto Rico por diecisiete (17) empleados de la demandada, reclamando salarios al amparo de las leyes de Puerto Rico. La corporación demandada removió el caso al Tribunal de Distrito Federal para el Distrito de Puerto Rico basándose en que había diversidad de ciudadanía y en que de todos modos, había jurisdicción sobre la materia por tratarse de una cuestión federal.

En cuanto al tema de jurisdicción, el tribunal federal señaló que las partes concedían el hecho de que los terrenos en los que ubicaba la Base Roosevelt Roads fueron adquiridos por Estados Unidos antes del año 1955 y que, por ende, la jurisdicción del E.L.A. sobre tales terrenos cesó y ahora radica únicamente en Estados Unidos. Por ende, el tribunal concluyó que dichos terrenos recaen sobre la *jurisdicción legislativa exclusiva* del Congreso de Estados Unidos.

Además, se resolvió específicamente lo siguiente: "the fact that exclusive legislative jurisdiction exists over Roosevelt Roads Base is not equivalent to stating that federal courts have exclusive jurisdiction over all actions arising in a federal enclave". *Sopena v. Colejon Corp.*, ante, pág. 264.

*Sovereign States: Preemption and the Second Twentieth Century Revolution in the Law of the American Workplace,* 62 Fordham L. Rev. 469, 521 (1993).

La citada Ley Federal de Normas Razonables del Trabajo *no* contiene disposición alguna relativa a las partidas solicitadas en el caso de marras por la Sra. Renata Roberts; esto es, derecho a mesada, a bono de Navidad y a vacaciones.[15]

¿Significa lo anteriormente expuesto que la recurrida Roberts no tiene derecho alguno a las mencionadas partidas? En circunstancias en las que la relación obrero-patronal se rige por convenios colectivos o por contratos de trabajo, y en ausencia de legislación aplicable, la contestación a dicha interrogante depende de los términos y condiciones que, respecto a dichas partidas o renglones, acuerden las partes.

Según la deposición que fuera tomada a la recurrida Sra. Renata Roberts, la cual obra en autos, cuando ésta comenzó a trabajar para U.S.O. Council of P.R. no firmó ningún contrato de empleo como tal, sino que se le otorgó una carta de nombramiento y una descripción de las tareas y responsabilidades de su cargo. Según surge de dicha deposición, en la mencionada carta se indicó, entre otras cosas, el número de días que tendría para disfrutar de sus vacaciones.[16] Además, la recurrida señaló que "[p]osteriormente, actualizaron la política de personal, y dispusieron que los directores y los directores ejecutivos tenían derecho a 27 días de licencia anual".[17] Así, en

---

[15] Es importante notar, además, que en la referida ley se indica que las disposiciones relativas a salario mínimo y a pago por concepto de horas extras no aplican en una serie de instancias y a una serie de personas. Entre las personas exentas de la aplicación de dicha ley están los empleados que ocupen puestos "ejecutivos", "administrativos" o "profesionales". 29 U.S.C. sec. 213.

De los autos del caso ante nos, hemos notado que existe una controversia en torno a si Renata Roberts ocupaba un puesto catalogado como "ejecutivo", "administrativo" o "profesional", en cuyo caso tampoco le sería de aplicación la referida ley.

[16] Véase Deposición tomada a la Sra. Renata Roberts, pág. 10. Cabe señalar que la carta aludida no obra en el expediente ante nos.

[17] Deposición tomada a la Sra. Renata Roberts, págs. 10–11.

cuanto a las vacaciones, el tribunal de instancia deberá atenerse a lo estipulado por las partes y/o a la política de U.S.O. Council of P.R. y de U.S.O., Inc. para la concesión de tal beneficio.

Además, será necesario examinar dicha carta para determinar si allí se estipuló qué ocurriría en caso de que la Sra. Renata Roberts fuera despedida. Ello es de suma importancia, puesto que a la recurrida no le aplica la Ley Núm. 80 de 30 de mayo de 1976 (29 L.P.R.A. sec. 185a *et seq.*), por ser, repetimos, de aplicación exclusiva al presente caso el derecho federal.

█ Es menester señalar que las relaciones laborales en Estados Unidos se rigen, en términos generales, por la doctrina del empleo a voluntad (*employment-at-will*). Como indicáramos en *Vélez Rodríguez v. Pueblo Int'l, Inc.*, 135 D.P.R. 500, 505 y 506 (1994), la referida doctrina "establece que un patrono en el sector privado puede despedir a un empleado contratado por tiempo indeterminado, con o sin justa causa, y ... el empleado no tiene por esta acción recurso judicial alguno contra su ex patrono. 1 *Larson, Unjust Dismissal* Sec. 1.01, págs. 1–2 y 1–3 (1993)". (Escolio omitido.) Véanse, además: *Payne v. Western & Atl. R.R.*, 179 S.W. 134 (1915); S.L. Moller, *The Revolution That Wasn't: On the Business–as–Usual Aspects of Employment–at–Will*, 27 U. Rich. L. Rev. 441–495 (1993).

Expresamos en *Vélez Rodríguez v. Pueblo Int'l, Inc.*, ante, pág. 507, que:

> ... el desarrollo más importante para sancionar el despido injustificado en el derecho laboral estadounidense *ha sido el de las excepciones, creadas por los tribunales, a la doctrina del empleo a voluntad.* Éstos, al enfrentarse a ciertos abusos por parte de algunos patronos hacia sus empleados para los cuales *no existía protección legislativa* alguna, han creado jurisprudencialmente una serie de remedios mediante la aplicación de varias teorías del *common law.* (Énfasis suplido y en el original.)

█ Las categorías de excepciones a la doctrina del

empleo a voluntad son las siguientes: (1) contratos implícitos o de facto (*implied in fact contracts*); (2) política pública (*public policy torts*), y (3) principios de buena fe y trato justo (*covenants to exercise good faith and fair dealing*).

Bajo la excepción de la teoría del contrato implícito o de facto, un empleado que es despedido en violación a las promesas orales o implícitas hechas por el patrono, o derivadas de las políticas o manuales del patrono para la retención del empleo, puede recobrar ante el incumplimiento de éste con tales promesas. Moller, ante. Para tener éxito en una reclamación bajo esta excepción, se ha indicado que el demandante tiene que alegar y demostrar: (1) que el patrono hizo una promesa de seguridad de empleo; (2) que el empleado descansó en dicha promesa y, en consecuencia, actuó conforme a la misma; (3) que el patrono quebrantó su promesa al despedir al empleado, y (4) que el empleado sufrió daños. *Ello no obstante*, los patronos tienen la libertad de hacer contratos de empleo conforme a los cuales puedan despedir a sus empleados a su voluntad y aun sin mediar una previa determinación de justa causa. De hecho, bajo esta primera excepción discutida, el empleado está obligado a rebatir la presunción de que su empleo era uno a voluntad. Además, en términos generales la existencia de un empleo a voluntad no se altera meramente por las creencias subjetivas del empleado. Moller, ante.

La segunda excepción que se ha reconocido, esto es, la de política pública, "establece que un patrono no puede despedir a un empleado contratado por tiempo indeterminado si el propósito y la intención de tal despido es frustrar y subvertir una clara política pública estatal". *Vélez Rodríguez v. Pueblo International*, ante, pág. 507. Bajo esta excepción se le permite al obrero instar una acción en daños y perjuicios contra su patrono por haberlo despedido a manera de represalia, entre otras cosas, por haber reclamado algún derecho conferido por cierta ley o reglamenta-

ción, o por haber informado a determinada agencia reguladora que su patrono estaba incumpliendo con algún requisito impuesto por ley. El empleado tiene que demostrar: (1) que existía una clara política pública manifestada en una Constitución federal o estatal, en una ley, en una reglamentación administrativa o en el derecho común; (2) que despidieron al empleado en circunstancias que pueden perjudicar la política pública en cuestión; (3) que el despido fue motivado por conducta relacionada a dicha política pública, y (4) que el patrono no tenía una justificación legítima para el despido. Véanse: Moller, ante; *Vélez Rodríguez v. Pueblo International*, ante.

La tercera excepción —buena fe y trato justo— permite que un empleado presente una reclamación si el patrono ha violentado los principios de buena fe y trato justo implícitos en la terminación del empleo. Véase *Fortune v. National Cash Register Co.*, 364 N.E.2d 1251 (1977). A raíz de ello, aun cuando generalmente los patronos pueden despedir a sus empleados por cualquier razón, sea ésta buena o mala, o sin razón alguna, el patrono no puede ejercitar tal derecho de mala fe ni injustamente. Moller, ante. Es decir, luego de que el empleado demuestra que existía una relación de trabajo y que la misma terminó, el juzgador determina si el despido fue justo y de buena fe. En relación a esta tercera excepción, se ha indicado que hay que ser cautelosos, puesto que una postura muy liberal tendría el efecto práctico de abolir la doctrina del empleo a voluntad. Así, una crítica que se le ha hecho a esta excepción es que imponer el requisito de buena fe y trato justo al despedir a un empleado equivale a requerir justa causa para el mismo. M.A. Glendon y E.R. Lev, *Changes in the Bonding of the Employment Relationship: An Essay on the New Property*, 20 B.C. L. Rev. 457 (1979), citado en Moller, ante. Sin embargo, en la práctica los tribunales no han requerido la existencia de justa causa al despedir a un empleado.

En fin, *no* siendo de aplicación al caso de autos la legislación laboral local, la determinación judicial sobre si la recurrida Renata Roberts tiene algún derecho —relativo a vacaciones, mesada y bono de Navidad— *necesariamente* tiene que depender de la prueba que aporten las partes sobre los acuerdos suscritos por ellos respecto a dichos reclamos; debiendo, además, el foro de instancia considerar al hacer dicha determinación las excepciones a la doctrina del empleo a voluntad.

Por las razones antes expuestas, *se dictará sentencia confirmatoria de la resolución recurrida; devolviéndose el caso al tribunal de instancia para procedimientos ulteriores consistentes con lo aquí expuesto y resuelto.*

El Juez Asociado Señor Fuster Berlingeri emitió una opinión disidente, a la cual se unieron el Juez Presidente Señor Andréu García y la Juez Asociada Señora Naveira de Rodón.

## — O —

Opinión disidente emitida por el Juez Asociado Señor Fuster Berlingeri, a la cual se unen el Juez Presidente Señor Andréu García y la Juez Asociada Señora Naveira de Rodón.

Estoy de acuerdo con la mayoría del Tribunal en que, en el caso de autos, los tribunales del Estado Libre Asociado de Puerto Rico tienen plena jurisdicción para entender en la reclamación laboral de la recurrida Renata Roberts contra su patrono, U.S.O. Council of P.R., Inc. La reclamación aludida se formuló exclusivamente al amparo de la legislación laboral de Puerto Rico, por una residente de la isla, contra una corporación puertorriqueña. Aunque el patrono querellado llevaba a cabo sus actividades en los terrenos de una base militar norteamericana, no existe disposición congresional alguna de la que surja que existe jurisdicción

sobre esta reclamación en los tribunales federales y, menos aún, que tal jurisdicción federal es exclusiva. Por ende, tienen jurisdicción nuestros tribunales.

Con lo que no estoy de acuerdo es con el dictamen de la mayoría de que la reclamación en este caso se rige por derecho federal. Estimo que tal dictamen es contrario a las más elementales normas de la doctrina federal sobre el campo ocupado (*preemption*); y en el fondo, es contradictorio también con la correcta decisión de la Mayoría sobre la jurisdicción que tienen nuestros tribunales respecto a la querella en cuestión. Finalmente, dicho dictamen es contrario a lo resuelto por este Foro sobre el particular en *Nolla, Galib & Cía. v. Tribunal Superior*, 93 D.P.R. 646 (1966), que es un caso de hechos esencialmente igual al de autos. Veamos.

## I

Debe resaltarse inicialmente que es indudable el poder plenario del Congreso de Estados Unidos para legislar respecto a las bases militares norteamericanas. Jurídicamente no puede disputarse que el Congreso posee tal poder. Lo único que nos concierne aquí es la cuestión de si el Congreso *ha ejercido* tal poder de algún modo que excluya en el caso de autos la aplicación del derecho de Puerto Rico invocado por la recurrida.

Tampoco hay controversia en cuanto a que el Congreso *no ha legislado* substantivamente sobre el asunto concreto de la reclamación laboral ante nos. El Congreso ciertamente podría aprobar alguna ley, regulando todo lo relativo a las condiciones de empleo de personas de las circunstancias de la querellante de autos, *pero no lo ha hecho*. No hay ley federal que aplique a una demanda de pago de mesada, de bono de Navidad y de vacaciones acumuladas de una residente de Puerto Rico contra un patrono puerto-

rriqueño como el de autos, por labores rendidas en una base militar norteamericana.

Como no existe legislación federal con la que puedan confligir las normas aplicables de Puerto Rico, éstas rigen la controversia ante nos, *a menos que el Congreso haya ocupado el campo* en relación con el asunto que nos concierne. Es decir, si el Congreso, en virtud del poder plenario que tiene sobre lo que acontece en una base militar, ha determinado expresamente que habrá competencia federal exclusiva sobre reclamaciones como la de Roberts, o si tal intención congresional es patente, aunque no se haya formulado expresamente, sólo entonces no es aplicable a este asunto la legislación de Puerto Rico sobre el particular. *Pennsylvania v. Nelson,* 350 U.S. 497 (1956); *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218 (1947); *Hines v. Davidowitz,* 312 U.S. 52 (1941).

Resulta, sin embargo, que no existe alguna disposición congresional conocida, que expresamente desplace, en las circunstancias aludidas, la legislación de Puerto Rico bajo la cual la querellante amparó su reclamación en el caso de autos. Tampoco existen fundamentos que permitan suponer que el Congreso indudablemente quiso ocupar el campo respecto a asuntos como los que concretamente nos conciernen aquí. No existe respecto a dichos asuntos un abarcador esquema regulatorio federal, riesgo de conflictos con la administración de algún programa federal ni un preeminente interés federal de uniformidad nacional, que permitan deducir una clara intención congresional de ocupar el campo. 2 *Rotunda y Nowak, Treatise on Constitutional Law: Substance and Procedure* Sec. 12.2, págs. 72–73 (1992). Por el contrario, los asuntos laborales que nos conciernen aquí son típicamente cuestiones que el Congreso deja a la discreción de los gobiernos estatales y, por ende, al Gobierno del Estado Libre Asociado de Puerto Rico. Se trata de funciones estatales tradicionales, que no quedan abolidas, sólo porque la actividad ocurre en una base

militar. Véanse: *Medtronic, Inc. v. Lohr*, 518 U.S. 470 (1996); *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246 (1994); *Building & Constr. Trades Council v. Associated Builders & Contractors of Mass./R.I., Inc.*, 507 U.S. 218 (1993); *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1 (1987); *Baker v. General Motors Corp.*, 478 U.S. 621 (1986); *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724 (1985); *Belknap, Inc. v. Hale*, 463 U.S. 491 (1983); *Sears, Roebuck & Co. v. Carpenters*, 436 U.S. 180 (1978); *Farmer v. Carpenters*, 430 U.S. 290 (1977); *Linn v. Plant Guard Workers*, 383 U.S. 53 (1966).

En resumen, como bien señalan los profesores *Rotunda y Nowak*, supra, Sec. 12.4, págs. 77, 78 y 90:

> The mere fact that Congress has the constitutional power to preempt an area does not mean that it has done so .... absent persuasive reasons evidencing Congressional intent favoring preemption, the [U.S. Supreme] Court will not lightly presume the invalidity of state regulations.
>
> ... Because the Court "is generally reluctant to infer preemption," Congress must speak clearly and make its intention to preempt unmistakable. (Escolios omitidos.)

En el caso ante nos, no surge de ningún modo que el Congreso haya querido desplazar la legislación puertorriqueña aplicable a éste. Para ello no basta con invocar la naturaleza de la base militar como un enclave federal, porque el propio Tribunal Supremo de Estados Unidos, ausente una expresión congresional clara, se ha negado a encontrar el campo ocupado aun respecto a áreas de la más preeminente injerencia federal, como lo es el caso de la seguridad física en plantas nucleares que sólo pueden establecerse y operar mediante licencias y extensa regulación federal. *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238 (1984). Si en tales situaciones no se desplaza la legislación estatal sobre asuntos propios del estado, tampoco puede ello ocurrir sólo porque el evento estatal acontece en una base militar, ya que los intereses federales en una situación y la otra son evidentemente análogos.

Tampoco puede invocarse rígidamente la disposición de la Constitución federal que dispone la autoridad del Congreso sobre terrenos adquiridos de los estados para instalaciones militares. Art. IV, Sec. 8, Cl. 17, Const. EE. UU. Como la propia mayoría admite, dicha disposición no es de aplicación a Puerto Rico, debido a que se refiere únicamente a los estados de la Unión. Más aún, dicha disposición no concede per se una facultad legislativa exclusiva al Congreso sobre las referidas instalaciones militares, sino la facultad al Congreso para *ejercer* tal facultad. Presupone que el Congreso, en efecto, tenga la intención de legislar exclusivamente. Si en alguna instancia el Congreso no ha optado por ejercer tal facultad exclusiva, no queda desplazada la ley estatal aplicable. Véanse: *Evans v. Cornman*, 398 U.S. 419 (1970); *Howard v. Commissioners*, 344 U.S. 624 (1953); *Stewart & Co. v. Sadrakula*, 309 U.S. 94 (1940); *Atkinson v. Tax Comm'n.*, 303 U.S. 20 (1938); *Mason Co. v. Tax Comm'n.*, 302 U.S. 186 (1937); *Palmer v. Barret*, 162 U.S. 399 (1896). El Prof. Lawrence Tribe resume el asunto sucintamente en su conocida obra *American Constitutional Law*, 2da ed., Nueva York, Ed. Foundation, 1988, pág. 329: "congressional jurisdiction over federal enclaves is exclusive only if exercised." Ello no ha sucedido respecto a los asuntos que nos conciernen aquí concretamente.

No hay base, pues, para concluir, como erróneamente lo hace la Mayoría, que no aplica el derecho de Puerto Rico al caso de autos.

## II

La determinación que hace la Mayoría de que los tribunales de Puerto Rico tienen jurisdicción para entender en el caso de autos, pero que el derecho aplicable es el federal, es realmente contradictoria. Si el Congreso en efecto hubiese ocupado el campo legislativo tácitamente respecto a

los asuntos que nos conciernen, como aduce la Mayoría, por tratarse de un enclave tan intensa y abarcadoramente "federal" como es una base militar, entonces es difícil comprender por qué la presunta exclusividad no se extiende también al ámbito judicial. Es decir, como los criterios constitucionales para la determinación de exclusividad federal para ambos asuntos son los mismos —intención expresa del Congreso o intención patente aunque no expresa— resulta incomprensible que en este caso se resuelva que la jurisdicción legislativa es exclusivamente federal pero la judicial no lo es, sobre todo cuando la mayoría afirma, además, que la jurisdicción en cuanto a delitos que ocurren en enclaves federales, es exclusiva de los tribunales federales.

Para enmarañar las cosas aún más, tampoco resulta comprensible que la Mayoría decrete que el derecho aplicable al caso de autos es el federal, pero que entonces dictamine que los reclamos concretos de la empleada aquí han de resolverse conforme "los acuerdos suscritos" entre ella y su patrono respecto a dichos reclamos. ¿Es esto "derecho federal"? ¿Son los términos del contrato de la querellada y su patrono "derecho federal"?

Finalmente, nada dice la mayoría sobre el precedente de *Nolla Galib & Cía. v. Tribunal Superior*, supra, que es claramente controlante aquí. ¿Queda revocado? ¿Por qué el silencio sobre el particular?

## III

Por todo lo expuesto antes, debo disentir del dictamen mayoritario aludido. No existen fundamentos adecuados aquí para concluir que el derecho de Puerto Rico no es aplicable a la reclamación de la recurrida Roberts. El desacertado dictamen puede privar a una empleada de emolumentos que corresponden a su esfuerzo y trabajo, lo que

sería injusto, sobre todo cuando ello se decreta supuestamente en aras de proteger una prerrogativa congresional que el propio Congreso no ha optado por ejercer. Sólo puede llegarse a tal resultado mediante una postura de ser "más papista que el papa", como la que delata la Mayoría en este caso. Ello es lamentable, aun para los intereses a que responde tal postura, porque el celo excesivo en proteger lo federal sólo redunda en el desdoro de lo propiamente federal.