425

# 2004 DTA 121

RECEIVED
NOV 1 6 2004
DEPARTMENT
LAW SCHOOL LIBRARY

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**REGIÓN JUDICIAL DE CAROLINA, PANEL X**

DEPARTAMENTO DE LA FAMILIA
Recurrida

v.

ZAIDA ZAPATA OPORTO
Peticionaria

GUSTAVO LIPEZKER DE CURTIS
Interventor

Núm. KLCE-2004-00882

San Juan, Puerto Rico, a 8 de julio de 2004

Panel integrado por su Presidente, el Juez Rodríguez Muñiz,
y los Jueces Colón Birriel y Fraticelli Torres

Rodríguez Muñiz, Juez Ponente

## TEXTO COMPLETO DE LA RESOLUCIÓN

Zaida Zapata Oporto (en adelante, "*Zapata*") presentó ante nos un recurso de *certiorari* el 30 de junio de 2004. Mediante el mismo, solicitó la revisión de la jurisdicción del Tribunal de Primera Instancia, Sala Superior de Carolina (en adelante, el TPI) y la consolidación del presente caso con el caso de custodia ordinaria *Zaida Zapata Oporto v. Gustavo Lipezker*, FDI-2000-0472. De otra parte, solicitó la revisión de las determinaciones del TPI, recogidas en la Minuta de 9 de junio de 2004, en cuanto a: (1) permitir la intervención del padre biológico a todos los fines de ley; ▮ (2) denegar el remedio de desglose de pensión alimentaria, y (3) suspender indefinidamente las relaciones materno-filiales.

Zapata presentó en unión a su recurso, una moción en auxilio de jurisdicción.

Por las razones que se exponen a continuación, se deniega la expedición del recurso de *certiorari* presentado.

### I

Los hechos que dan inicio al presente caso son los siguientes. En el año 2000, Gustavo Lipezker De Curtis (en adelante, "*Lipezker*"), padre biológico de los menores GLZ y FLZ, solicitó la custodia de éstos en el caso de custodia ordinaria *Zaida Zapata Oporto v. Gustavo Lipezker*, FD1-2000-0472.

En agosto de 2002, Zapata solicitó al Departamento de la Familia, al Departamento de la Policía de Puerto Rico y al Sistema de Emergencias 911 que investigaran sobre el alegado abuso sexual del que estaban siendo objeto sus hijos, los menores GLZ y FZL. Luego de las investigaciones de rigor, dicha denuncia no prosperó.

Posteriormente, en abril de 2003, Zapata alegadamente encontró tres (3) fotos en la que aparecía el menor GLZ mostrando sus partes íntimas. Una vez más, Zapata solicitó al Departamento de la Familia que iniciara una investigación sobre el particular. Así pues, la referida agencia refirió el asunto al Centro de Servicios Integrados de Niños y Niñas e instruyó a Zapata que acudiera al Departamento de la Policía para presentar una querella. Los agentes de la Unidad de Delitos Sexuales, a base de su investigación, determinaron archivar el caso. Por otro lado, una trabajadora social del Departamento de la Familia instruyó a Zapata que solicitara la suspensión de las relaciones paterno-filiales, por lo que el 10 de abril de 2003, ésta presentó Solicitud Urgente de Orden Para Suspender de (sic) Relaciones Paterno-Filiales y Suspensión de Vista de Custodia, en el caso de custodia ordinaria.

Luego de varios incidentes procesales en ese caso, el 18 de marzo de 2004, el Departamento de la Familia

presentó una petición de emergencia ante el TPI en la que solicitó la custodia provisional de los menores GLZ y FLZ, al amparo del Artículo 23 de la Ley Núm. 177 de 1ro de agosto de 2003, conocida como Ley para el Bienestar y la Protección Integral de la Niñez. El Departamento de la Familia basó su petición en los resultados del informe preparado por Aivelisse Abikarán Nieves, trabajadora social adscrita a dicha agencia, en el que señaló que los menores serían sometidos a evaluación por el Centro Integrado para Niños y Niñas con el propósito de confirmar si habían sido víctimas de abuso sexual. Además, la trabajadora social determinó que Zapata había incurrido en negligencia en el cuidado de los menores, ya que presentaban pobre aseo personal, ausentismo crónico escolar, pobre higiene y desorganización en el hogar.

Así las cosas, el 7 de abril de 2004, el TPI celebró vista de ratificación de remoción de custodia en el presente caso. De la Minuta surge, en lo pertinente, que Lipezker presentó Moción de Intervención. En la misma, solicitó que se autorizara su intervención. Además, solicitó que se emitiera una orden de protección a favor de los menores y que se le entregara la custodia provisional como recurso familiar. El TPI declaró "*ha lugar*" la solicitud de intervención y señaló una continuación de vista de ratificación para el 9 de julio de 2004.

De otra parte, según Zapata, en la vista del 7 de abril de 2004, ésta intentó traer a colación la existencia de las fotos en que aparece el menor GLZ mostrando sus partes íntimas. ■ Por lo que, Lipezker y la Procuradora Especial de Relaciones de Familia solicitaron que no se admitiera prueba del pleito de custodia ordinaria en el caso de epígrafe, petición que fue declarada "*ha lugar*" por el TPI.

Luego de varios trámites procesales interlocutorios, el TPI celebró el 9 de junio de 2004, la continuación de la vista de ratificación de remoción. De la Minuta de ese día surge, en lo pertinente, que el TPI ratificó que Lipezker podía intervenir en los procedimientos a los fines de ser considerado como hogar recurso. Por otra parte, el TPI declaró "*no ha lugar*" la solicitud de Zapata sobre el desglose de la pensión alimentaria. ■ Además, el foro recurrido decretó la suspensión provisional de las relaciones materno-filiales. La representante legal de Zapata solicitó que la trabajadora social incluyera en su informe, a discutirse en la próxima vista, su recomendación en cuanto a la suspensión de las relaciones materno-filiales. Por último, el TPI señaló una segunda continuación de vista de ratificación para el 14 de julio de 2004 a las 3:00 a.m. y una tercera continuación para el 6 de octubre de 2004, a las 9:00 a.m.

El 27 de junio de 2004, Zapata presentó: Moción Urgente Solicitando la Paralización Indefinida de las Vistas Paterno Filiales, Remoción Urgente de los Menores del Hogar Custodio; Cambio Urgente de Trabajador Social de Otra Región Solicitud De Consolidación y Traslado a la Región de San Juan. ■ En lo pertinente, Zapata solicitó de carácter urgente, lo siguiente:

"*a. La suspensión inmediata de las visitas paterno-filiales.*

*b. La remoción de los menores GLZ y FLZ del hogar custodio.*

*c. La entrega de los menores a la compareciente.*

*d. Se re-asigne el caso a una Trabajadora Social de la Región de San Juan.*

*e. Ordene el cierre y cancelación de la licencia del hogar custodio.*

*f. Se consolide el caso de epígrafe con el caso de custodia ordinaria Zaida Zapata Oporto v. Gustavo Lipezker, FDI200-0472 caso de mayor antigüedad y se traslade el caso así consolidado a la Región Judicial de San Juan.*"

## II

Por no estar conforme con las determinaciones del TPI, Zapata comparece ante nos y aduce que:

"1. Cometió error el Foro Recurrido al intervenir y mantener jurisdicción sobre el presente caso, ya que el origen del mismo procede del caso de custodia ordinaria ante el mismo tribunal de Carolina, distintas salas, *Zaida Zapata Oporto v. Gustavo Lipezker, FDI-2000-0472,* por lo que procede su Consolidación y Traslado, así consolidados a la Región Judicial de San Juan.

2. Cometió error el Tribunal Recurrido al: (1) permitir la intervención del padre biológico a todos los fines de ley; (suspender indefinidamente las relaciones materno-filiales violando el debido proceso de ley; y (3) denegar el remedio de desglose de pensión alimentaria para la protección del hogar de los menores fundamentado en falta de jurisdicción." (Subrayado en el original.)

## III

Ley Número 177, *supra,* que derogó la Ley 342, ▮ propone un nuevo enfoque para el bienestar y la protección integral de la infancia y la adolescencia. Estableció como política pública del Estado Libre Asociado de Puerto Rico asegurar el mejor interés, la protección y el bienestar integral de la infancia y la adolescencia. Además, como parte del deber de asegurar ese bienestar, dispuso que se deben proveer oportunidades y esfuerzos razonables que permitan conservar los vínculos familiares y comunitarios cuando ello no les perjudique.

El estatuto en cuestión, en el Artículo 31, autoriza al Departamento de la Familia a comparecer ante el TPI, quien tendrá jurisdicción para emitir órdenes de protección, otorgar la custodia de emergencia, provisional, o permanente y privar de la patria potestad a los padres en protección de un menor víctima de maltrato o negligencia.

Mientras que el Artículo 23 de la Ley 177, *supra,* autoriza a los técnicos y trabajadores sociales del Departamento de la Familia, así como a otros funcionarios y profesionales de la salud, a tomar bajo su custodia protectora a un menor por un período de veinticuatro (24) horas, en casos en que ello fuera necesario para su protección. El Departamento de la Familia también está facultado para solicitar la privación temporera de la custodia del menor contra sus padres o encargados en situaciones de emergencia y para la protección del menor.

▮

## IV

Como se sabe, *"el término 'jurisdicción' significa el poder o autoridad de un tribunal para considerar y decidir casos o controversias." Roberts v. USO Council of P.R.,* 145 D.P.R. 58, 67 (1998); *Rodríguez v. Registrador,* 75 D.P.R. 712, 716-717 (1953). Para que un tribunal pueda entrar a dilucidar un caso, tiene que tener jurisdicción sobre la materia y sobre la parte demandada.

## V

El auto de *certiorari* es un remedio procesal, utilizado para que un tribunal de mayor jerarquía pueda corregir un error cometido por un tribunal inferior. *Negrón Placer v. Secretario de Justicia,* 154 D.P.R. __, **2001 J.T.S. 66,** a la página 1199, Opinión de 2 de mayo de 2001. La expedición del mismo, como señala la ley, queda en la sana discreción del tribunal apelativo. *Id.*

El Reglamento Transitorio del Tribunal de Apelaciones de 18 de noviembre de 2003, establece una serie de criterios, para guiar *"de una manera sabia y prudente la facultad de entender o no en los méritos en los asuntos que le son planteados mediante el recurso de certiorari ...."*. *Id.* A esos efectos, la Regla 40 de nuestro Reglamento dispone lo siguiente:

*"El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:*

*(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.*

*(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.*

*(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.*

*(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.*

*(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.*

*(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.*

*(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia."*

## VI

En el caso ante nos, el Departamento de la Familia presentó una petición de emergencia ante el TPI en la que solicitó la custodia provisional de los menores GLZ y FLZ, al amparo del Artículo 23 de la Ley Núm. 177, *supra*. El TPI determinó que los menores eran víctimas de maltrato, por lo que privó de la custodia de manera provisional a Zapata.

En su recurso, Zapata plantea que el TPI no tenía jurisdicción para intervenir en el caso de epígrafe, debido a que la remoción de los menores es el resultado de una orden emitida en el caso de custodia ordinaria. Por lo tanto, solicitó la consolidación del presente caso con el caso de custodia ordinaria y el traslado del mismo a la Región Judicial de San Juan.

Según ya indicáramos, la Ley 177, *supra*, dispone que el TPI tiene jurisdicción para emitir órdenes de protección, otorgar la custodia de emergencia, provisional, o permanente y privar de la patria potestad a los padres en casos donde se confirme que un menor es víctima de maltrato o negligencia.

En cuanto a la solicitud de consolidación y de traslado presentada por Zapata, ésta argumentó que la negativa del TPI de admitir como prueba las fotos del menor GLZ, las cuales dieron lugar al proceso de investigación sobre el alegado maltrato de los menores, hace necesario la consolidación de los casos en aras de una solución justa y práctica.

De los autos del caso, surge que las solicitudes de consolidación y traslado fueron presentadas ante el TPI mediante moción de 27 de junio de 2004. Del expediente no surge que el TPI haya emitido alguna determinación sobre el particular. Ante el drama humano que están viviendo los menores y sus padres, entendemos que merecen que le demos la oportunidad al TPI, luego de haberse suspendido el procedimiento en varias ocasiones, para que resuelva finalmente las controversias ante su consideración en el caso de remoción de custodia. Más aún cuando el caso tiene una vista señalada para el 14 de julio de 2004. Nada impide que, de ser necesario, el TPI continúe los procedimientos los días 15 y 16 de julio de 2004, o en alguna otra fecha cercana en el calendario, de forma tal que pueda resolver finalmente esta controversia.

Mientras que en relación al argumento de Zapata sobre la negativa del TPI de admitir la prueba consistente en unas fotos, las Reglas de Evidencia, como condición previa a su admisibilidad, requieren su identificación, autenticación y demostración de pertinencia al asunto en controversia. Aunque las fotos parecen cumplir con los requisitos, de los autos no surge con claridad, a diferencia de lo alegado por Zapata, que el TPI haya resuelto sobre la admisibilidad, o no de las mismas en el pleito de maltrato. ■ Sí surge de los autos, que fueron esas fotos las que activaron las gestiones del Departamento de Familia para iniciar el trámite de remoción de los menores del hogar materno. Siendo así, pueden ser pertinentes.

En virtud de lo anterior, entendemos que la etapa en la que se ha presentado este recurso de *certiorari* no es la más apropiada para su consideración. La expedición del auto causaría un fraccionamiento indebido en la tramitación del pleito y una dilación indeseable en la solución final del litigio.

Por otra parte, no podemos pasar por alto, que la representante legal de Zapata señaló en el recurso de *certiorari* que su cliente *"ha sido víctima de ilegalidades originadas en la misma área administrativa y judicial"*. ■ *"[R]econocemos que hay instancias en la que a los abogados – que con tesón y esmero defienden las causas de sus cliente –, les causa desazón las determinaciones adversas que puedan hacer los tribunales; no obstante, ello no es licencia para cuestionar la dignidad, honestidad y ecuanimidad de los miembros de la Judicatura."* In re: Crespo Enríquez, 147 D.P.R. 656, 663 (1999).

El Tribunal Supremo en *In re: Cardona Álvarez*, 116 D.P.R. 895, 905-906 (1986), expresó lo siguiente:

*"Así, **cuando un abogado entiende que el comportamiento judicial de alguna manera afecta los derechos de su representado, debe solicitar del foro correspondiente el remedio apropiado.** Posteriormente, de ser necesario, puede llevarlo a récord para la acción correctiva procedente por un tribunal de superior jerarquía. (Cita omitida)*

*Para evaluar la legitimidad de la conducta oral o escrita del abogado, y balancear los intereses éticos y de libertad forense expuestos, hemos establecido varios criterios, a saber: (a) si aunque equivocado, creía en la validez de las imputaciones del juez; (b) si aunque los hechos no eran ciertos, tenía motivos fundados o causa probable para creer en su veracidad; (c) si la imputación no fue hecha maliciosamente con el propósito deliberado de denigrar al tribunal. (Citas omitidas)*

*Con arreglo a esta visión doctrinaria, **hemos impuesto sanciones disciplinarias a un abogado, por hacer imputaciones orales o escritas, sobre la comisión de hechos inmorales o ilegales -que no están respaldados por evidencia competente-, tendente a degradar la dignidad, honorabilidad e integridad de los tribunales y de sus funcionarios o que puedan debilitar la confianza pública en los mismos.** (Cita omitida) Asimismo, por la **presentación de mociones y escritos en los que se formulan acusaciones a los magistrados, sin fundamento, mediante el uso de lenguaje impropio y ofensivo, lo cual constituye conducta lesiva a la dignidad del tribunal.** (Cita omitida)"* (Énfasis nuestro)

## VII

A tenor con lo anterior, procede denegar el recurso presentado, sin perjuicio de que una vez el Tribunal de Primera Instancia resuelva en los méritos el caso de epígrafe, cualquiera de las partes presente el recurso que estime conveniente.

La Moción en Auxilio de Jurisdicción resulta académica en virtud de lo anteriormente resuelto.

Notifíquese de inmediato por facsímil y vía ordinaria a las partes y a la Honorable Juez Olga I. García Vincenty.

Lo acordó el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

**ESCOLIOS 2004 DTA 121**

1. Según la Minuta, el TPI permitió la intervención del padre biológico para ser considerado como hogar recurso.

2. De la Minuta de ese día no consta lo alegado por Zapata.

3. El Departamento de la Familia había congelado los fondos correspondientes a la pensión alimentaria de los menores a los fines de recobrar los costos en que incurre el Estado al tener que pagar una subvención a un hogar de crianza.

4. Según informado por la parte interventora Lipezker en su oposición a la moción en auxilio de jurisdicción.

5. Esta ley entró en vigor noventa (90) días después de su aprobación, es decir, el 30 de noviembre de 2003.

6. Artículo 37 de la Ley 177, *supra*.

7. Véase la Minuta del 4 de junio de 2004.

8. Véase el Recurso de *Certiorari* a la página 12.