EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Carlos Cintrón Jácome, et al.<br><br>    Recurrido<br><br>              v.<br><br>General Emilio Díaz Colón<br><br>    Peticionario | Certiorari<br><br>2003 TSPR 65<br><br>159 DPR \_\_\_\_ |

Número del Caso: CC-2001-868


Fecha: 24 de abril de 2003


Tribunal de Circuito de Apelaciones:
                    Circuito Regional V


Panel integrado por su Presidenta, la Jueza Fiol Matta, la Jueza Rodríguez de Oronoz y el Juez González Román


Oficina del Procurador General:
                    Lcda. Leticia Casalduc Rabell
                    Procuradora General Auxiliar


Abogados de la Parte Recurrida:
                    Lcdo. Arnaldo J. Irizarry Irizarry
                    Lcdo. Iván Crespo Arroyo



Materia: Injunction Permanente, Sentencia Declaratoria, Daños y
        Perjuicios




Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Carlos Cintrón Jácome, et al.

    Recurrido


        vs.                    CC-2001-868    Certiorari


General Emilio Díaz Colón

    Peticionario


Opinión del Tribunal emitida por el Juez Asociado SEÑOR FUSTER BERLINGERI.


        San Juan, Puerto Rico, a 24 de abril de 2003.


        Nos toca decidir si los tribunales del Estado Libre Asociado de Puerto Rico tienen jurisdicción para entender en una acción de restitución al empleo y de daños y perjuicios por despido discriminatorio, incoada por un trabajador de la Guardia Nacional de Puerto Rico en contra de su patrono y el E.L.A. respectivamente.

                        I

        Carlos Cintrón Jácome (en adelante, "Cintrón") se desempeñaba como técnico de equipo pesado ("heavy machinery technician") para la Guardia Nacional de Puerto Rico. El 19 de agosto de 1996, el patrono le

notificó a Cintrón que se proponía tomar una acción disciplinaria en su contra por haber participado alegadamente en la desaparición de un vehículo de la Guardia Nacional. Se le formularon cargos a Cintrón por haber mutilado y haber hecho uso indebido de dicha propiedad, y por haber emitido declaraciones juradas falsas sobre el particular. Luego de brindársele oportunidad para contestar las referidas imputaciones por escrito, el 18 de noviembre de 1996 la Guardia Nacional le notificó a Cintrón su despido del puesto que ocupaba allí, efectivo el 8 de enero de 1997, y se le advirtió sobre su derecho a apelar ante el Ayudante General de dicho cuerpo.

El 25 de agosto de 1997, Cintrón presentó la demanda que aquí nos concierne contra el Ayudante General de la Guardia Nacional, el General Emilio González, y el Estado Libre Asociado de Puerto Rico ante el Tribunal de Primera Instancia, Sala Superior de Ponce. En esencia, en ella alegó que se desempeñaba como empleado regular y de carrera, realizando tareas de civil en la Guardia Nacional de Puerto Rico; que había sido despedido de su puesto sin que se explicaran las razones de dicho despido; que las acciones de la parte demandada violentaban lo dispuesto en el acuerdo obrero-patronal que regía la conducta entre el patrono y los empleados; que la actuación de los co-demandados era nula e ilegal por ser contraria a la Ley Orgánica de la Guardia Nacional y a la Ley de Personal de Puerto Rico; que las actuaciones ilegales y negligentes de los co-demandados eran inconstitucionales debido a que siendo él miembro del Partido Popular Democrático, había sido despedido por motivaciones político-partidistas por

ser el Ayudante General de la Guardia Nacional miembro del Partido Nuevo Progresista.

Cintrón solicitó al foro de instancia que declarara que su despido había sido ilegal y en violación de sus derechos constitucionales, que ordenara su inmediata restitución al puesto que ocupaba, y que prohibiera a los codemandados y a sus sucesores interferir con el goce y disfrute de su empleo. También solicitó que se le indemnizara a él y a su familia co-demandante por los daños sufridos por razón del referido despido. En apoyo de su reclamo, Cintrón alegó que la Guardia Nacional lo había usado como chivo expiatorio, y que su despido se había realizado sin celebrar la vista administrativa a que tenía derecho. Alegó, además, que intentar agotar los remedios administrativos hubiera sido inefectivo y no proveería un remedio adecuado al agravio planteado.

El 11 de agosto de 1998, los demandados solicitaron al tribunal de instancia que dictara una sentencia sumaria a su favor. Alegaron que dicho foro carecía de jurisdicción sobre la materia, que no se habían agotado los remedios administrativos, que no se había planteado una causa de acción que ameritara un remedio y que faltaba una parte indispensable. Alegaron también que Cintrón era un empleado federal, por lo que no tenía a su alcance la acción civil que había entablado, y que el gobierno de los Estados Unidos tenía que ser traído al pleito. Cintrón se opuso a dicha solicitud el 6 de abril de 1999. Alegó que la

Guardia Nacional de Puerto Rico lo había despedido sin consultar al gobierno federal, y que él era un empleado del E.L.A. En cuanto al agotamiento de remedios administrativos, adujo que había solicitado una vista administrativa el 4 de junio de 1997 pero no se le había concedido. Solicitó que no se concediera la sentencia sumaria porque su condición de empleado estatal o federal estaba en controversia, lo cual requería una vista evidenciaria.

El 26 de agosto de 1999, el E.L.A. sometió una moción en apoyo a su solicitud de sentencia sumaria, con la que acompañó una declaración jurada de Benjamín Colón Lara, Oficial Ejecutivo de Asuntos Estatales de la Guardia Nacional, mediante la cual el declarante aseguraba que el puesto de Cintrón respondía directamente al gobierno federal, quien era custodio exclusivo de su expediente. Acompañó también una copia del formulario 50-B de la Oficina Federal de Administración de Personal, titulado "Notification of Personnel Action", que describía el puesto de Cintrón como "Heavy Mobile Equipment Repairer" e indicaba que el departamento o agencia empleadora era el Departamento del Ejército.

El 15 de diciembre de 1999, el tribunal de instancia dictó una sentencia sumaria a favor de los demandados. Determinó que los promoventes habían probado que Cintrón era un empleado federal y que éste no había presentado evidencia en contrario. Además, resolvió que carecía de

jurisdicción sobre la materia porque la facultad del Ayudante General de la Guardia Nacional de Puerto Rico para contratar y despedir a Cintrón había emanado de normas federales.

Cintrón solicitó la reconsideración del dictamen referido, la cual fue denegada el 21 de enero de 2000. Cintrón entonces apeló la sentencia ante el Tribunal de Circuito de Apelaciones. El 29 de junio de 2001 dicho tribunal revocó el dictamen del foro de instancia, y le devolvió el caso para que continuaran los procedimientos allí. Resolvió que el caso de autos trataba de una acción de daños por despido injustificado y discriminatorio, sobre la cual los tribunales de Puerto Rico tenían jurisdicción, independientemente de que Cintrón fuese un empleado federal y de que aplicaran al caso tanto leyes como jurisprudencia federal.

El 29 de octubre de 2001, luego que se denegara su solicitud de reconsideración, el E.L.A. recurrió de dicha determinación ante nos, señalando que el Tribunal de Circuito de Apelaciones había errado al contravenir una alegada doctrina federal que prohíbe las causas de acción contra oficiales militares que surjan en el curso del servicio militar.

El 14 de diciembre de 2001 expedimos el recurso de certiorari solicitado por el Estado Libre Asociado de Puerto Rico, a los fines de revisar la sentencia emitida por el foro apelativo el 29 de junio de 2001. Luego de

concedérseles sendas prórrogas, el Procurador General sometió su alegato el 11 de abril de 2002; y la parte recurrida sometió el suyo el 17 de julio de 2002. Pasamos a resolver.

II

El E.L.A. en su alegato ante nos ha admitido que los tribunales de Puerto Rico tienen jurisdicción sobre las controversias que se plantean al amparo de leyes federales, pero toma excepción en cuanto a aquellas surgidas específicamente bajo las leyes de administración de personal militar, aduciendo que el personal militar carece totalmente de alguna causa de acción en contra de un superior. El Procurador General representando al Estado ha argumentado que el aspecto militar del puesto de Cintrón era inseparable del aspecto civil porque se le consideraba un integrante del departamento militar correspondiente y estaba sujeto a sus reglamentos. Adujo, además, que empleados como Cintrón no tienen una causa de acción contra oficiales militares por incidentes que surjan en el curso del servicio militar, aún cuando el reclamante invoque una violación a sus derechos civiles. Alegó, por ende, que en el caso de autos los tribunales de Puerto Rico carecen de jurisdicción para adjudicar la acción de los demandantes.

No tiene razón el E.L.A. Veamos.

A. La Jurisdicción Concurrente

Como se sabe, el principio fundamental que rige lo relativo al poder de los foros judiciales para resolver las cuestiones federales es el de la **jurisdicción concurrente**. Los tribunales federales y los estatales de ordinario tienen jurisdicción concurrente para entender en las controversias sobre derecho federal. <u>Yellow Freight Sys. Inc. v. Donnelly</u>, 494 US 820 (1990); <u>Golf Offshore Company v. Mobil Oil Corp.</u>, 453 US 473 (1981). Así lo hemos reconocido claramente antes. <u>Roberts v. U.S.O. Council of P.R.</u>, 145 D.P.R. 58, 69 (1998).

En virtud del referido principio, los tribunales estatales, incluyendo los de Puerto Rico, carecen de jurisdicción sobre algún asunto federal **<u>únicamente</u>** cuando la exclusividad de la jurisdicción federal sobre tal asunto ha sido dispuesta **<u>expresamente</u>** por el Congreso de Estado Unidos, o cuando ha sido declarada así por el Tribunal Supremo de Estados Unidos en situaciones en que la intención del Congreso de privar a los tribunales estatales de jurisdicción sobre dicho asunto federal es **palmariamente <u>clara</u>**. Véase, Wright-Miller and Cooper, *Federal Practice and Procedure*, Vol. XIII, págs. 241-247 (1984). La jurisdicción federal exclusiva es un asunto en extremo excepcional.

En el caso de autos es claro que el Congreso de Estados Unidos **no ha dispuesto** que reclamaciones como la que aquí nos concierne de personas empleadas por la Guardia Nacional están excluidas de la jurisdicción de los

tribunales estatales. No hay legislación federal a tales efectos. Más aun, es patente también que el Tribunal Supremo de Estados Unidos **no ha resuelto** que el tipo de acción que aquí nos concierne está excluida de la jurisdicción de los tribunales estatales.

El máximo foro judicial federal se ha expresado en varias ocasiones en que **soldados de las fuerzas armadas de Estados Unidos** demandaron a sus **superiores militares** en acciones federales de daños y perjuicios conocidas como **"Bivens actions"**. Se trata de acciones civiles para reclamar una indemnización del gobierno de los Estados Unidos por los daños ocasionados por funcionarios federales, que se incoa directamente al amparo de la propia constitución federal, conforme a lo resuelto en Bivens v. Six Unknown Federal Narcotics Agents, 408 US 388 (1971). En los casos aludidos, el Tribunal Supremo de Estados Unidos coincidió en que las acciones tipo Bivens no son procedentes cuando se trata de reclamaciones monetarias de soldados contra sus superiores militares. Véase, U.S. v. Stanley, 483 US 669 (1987); Chappell v. Wallace, 462 US 296 (1983). Dicho Tribunal también se ha expresado en cuanto a la improcedencia de acciones civiles federales incoadas por soldados de las fuerzas armadas de Estados Unidos en contra del gobierno federal al amparo del Federal Tort Claims Act, por conducta alegadamente negligente de dichas fuerzas armadas o de militares de alto rango. Véase, Feres v. U.S., 340 US 135 (1950). Pero el Tribunal Supremo federal no se

ha expresado en torno a acciones como la que aquí nos concierne, que es esencialmente una reclamación **no de un soldado** sino de un mero empleado de la Guardia Nacional, en contra **no del gobierno federal** sino del Estado Libre Asociado de Puerto Rico.

Ausente una legislación federal que ocupe el campo en casos como el de autos, y ausente también alguna decisión del Tribunal Supremo de Estados Unidos que disponga concretamente que en casos como el de autos la jurisdicción federal es exclusiva, es claro que conforme al fundamental principio federal sobre la jurisdicción concurrente, los tribunales de Puerto Rico tienen jurisdicción sobre el caso de autos.

No puede concluirse que los tribunales de Puerto Rico carecen de jurisdicción sobre el asunto en cuestión, como alega el Procurador General de Puerto Rico en este caso, sólo a base de interpolar distintas opiniones del Tribunal Supremo federal sobre otras materias análogas, por lógica que sea esa interpolación. La doctrina de la jurisdicción concurrente no nos requiere conjeturar sobre lo que hubiese hecho dicho Tribunal de habérsele planteado el caso de autos. Tampoco puede fundamentarse una decisión tan excepcional, como también alega el Procurador General, sólo en el hecho de que la Corte de Apelaciones de Estados Unidos para el Primer Circuito supuestamente haya resuelto un caso análogo del modo que el Estado nos pide que adjudiquemos el de autos. Ello debido a que la naturaleza y

funciones de ese distinguido foro son distintas de la nuestras, y sus dictámenes no nos obligan.[1]

En resumen, pues, no debe este Tribunal declarar que el poder judicial de Puerto Rico no tiene jurisdicción sobre algún asunto, a menos que ello sea patentemente claro, cosa que aquí no sucede, tratándose este caso de un mero empleado de la Guardia Nacional de Puerto Rico que reclama una indemnización del Estado Libre Asociado de Puerto Rico, en lo que aquí nos concierne.

B. La acción en el caso de autos

Es menester precisar también la naturaleza de la acción entablada por Cintrón en el caso de autos. Aunque su demanda aquí dista mucho de tener una redacción adecuada, un análisis cuidadoso de ésta revela que se trata primordialmente de una acción **estatal**, es decir, una acción al amparo de derechos y remedios que surgen mayormente **del ordenamiento jurídico de Puerto Rico**. Veamos.

Cintrón alegó en su demanda dos hechos medulares, a saber, 1) que fue despedido de su empleo en la Guardia Nacional; y 2) que ese despido le había ocasionado graves daños personales a él y a sus familiares. Cintrón alegó también que el despido había sido ilegal por ser contrario: 1) al convenio colectivo que los empleados de la Guardia Nacional tienen con su patrono; 2) a la Ley de Personal de Puerto Rico; 3) a la Ley de la Guardia Nacional de Puerto

---

[1] Véase, 28 U.S.C.A. 1258.

Rico, 25 L.P.R.A. sec. 2053 *et seq* y sec. 2911 *et seq*; 4) y a las constituciones de Puerto Rico y de Estados Unidos.

Con arreglo a lo anterior, Cintrón reclamó en esencia dos remedio, a saber: 1) que se le ordenara a la co-demandada Guardia Nacional que lo reinstalara en su empleo y lo mantuviese allí; 2) que ordenara al Ayudante General y al E.L.A. al pago de los daños y perjuicios que habían sufrido los demandantes.

Como parte de sus alegaciones, Cintrón también solicitó que se declarara inconstitucional la actuación de los co-demandados e invocó para ello la Regla 59 de Procedimiento Civil de Puerto Rico, que trata sobre sentencias declaratorias, y la sección 1983 del título 42 del U.S.C. También invocó la Ley General de Injunctions de Puerto Rico, 32 L.P.R.A. 3521 *et seq*.

Como puede apreciarse de todo lo anterior, la acción de Cintrón se instó al amparo primordialmente del ordenamiento jurídico de Puerto Rico. Su carácter esencial como una acción estatal se resalta precisamente por el hecho de que no se trajo de ningún modo a Estados Unidos o a las fuerzas armadas de Estados Unidos como parte en el pleito. **En ningún lugar se solicitó tampoco que la indemnización reclamada fuese pagada por el gobierno de Estados Unidos**. No se invocó el Federal Torts Claims Act ni se aludió a las reclamaciones tipo Bivens. El mero hecho de que la Guardia Nacional sea, como admite el Procurador General, una entidad híbrida estatal y federal no

"federaliza" de ningún modo la acción de Cintrón. Tampoco lo hace el mero hecho de que Cintrón fuese un empleado civil del Ejercito. Lo medular para determinar la naturaleza de la acción en cuestión es identificar cuáles son los derechos y remedios reclamados.[2] Los del caso de autos son primordialmente derechos y remedios que surgen del ordenamiento jurídico de Puerto Rico. Se trata esencialmente de una acción al amparo de la Constitución y las leyes de Puerto Rico, sobre la cual los tribunales del país no sólo tienen jurisdicción sino que deben ejercerla. Véase, Junta Dir. Cond. Montebello v. Fernández, 136 D.P.R. 223, 234 (1994).

Por los fundamentos expuestos, se dictará una sentencia para confirmar la del foro apelativo del 29 de junio de 2001.[3]

JAIME B.FUSTER BERLINGERI
JUEZ ASOCIADO

---

[2] A pesar de que la cuestión puede en ocasiones convertirse en un asunto complejo, la norma más clara sobre el particular es la famosa expresión del Juez Holmes de que "a suit arises under the law that creates the action". American Well Works Co. v. Layne, 241 US 257, 260 (1916).

[3] No nos pronunciamos aquí sobre la controversia de si Cintrón cumplió con el requisito de agotar los remedios administrativos pertinentes, o sobre cualquier otro asunto que no sea estrictamente la cuestión jurisdiccional que se discute en la opinión, que ha sido el único asunto objeto de litigación en el caso de autos hasta este momento.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Carlos Cintrón Jácome, et al.

    Recurrido


    vs.                              CC-2001-868    Certiorari


General Emilio Díaz Colón

    Peticionario



SENTENCIA



San Juan, Puerto Rico, a 24 de abril de 2003.


    Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente, se confirma la sentencia del Tribunal de Circuito de Apelaciones, Circuito Regional V, Ponce y Aibonito, emitida el 29 de junio de 2001.

    Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Corrada del Río emitió opinión disidente a la cual se unieron los Jueces Asociados señores Rebollo López y Rivera Pérez.


                   Patricia Otón Olivieri
            Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Carlos Cintrón Jácome, *et al.*

    Recurrido

        v.                         CC-2001-868    Certiorari

General Emilio Díaz Colón

    Peticionario

Opinión Disidente emitida por el Juez Asociado SEÑOR CORRADA DEL RÍO a la cual se unen los Jueces Asociados señores Rebollo López y Rivera Pérez.

San Juan, Puerto Rico, a 24 de abril de 2003.

Nos corresponde determinar si existe una causa de acción en daños y perjuicios a favor de un miembro de la Guardia Nacional de Puerto Rico contra sus oficiales superiores por actuaciones incidentales al servicio militar.

Dado que la mayoría se enfoca en discutir asuntos relacionados a la jurisdicción concurrente entre el foro estatal y federal para entender en el caso, sin considerar la doctrina enunciada por el Tribunal Supremo de Estados Unidos prohibiendo las causas de acción por daños ocurridos dentro del curso del servicio militar, disentimos.

I

A principios del año 1996, la Guardia Nacional comenzó una investigación con el propósito de esclarecer los hechos relacionados a la desaparición de un vehículo propiedad del gobierno federal, asignado a este cuerpo militar. Como parte de la pesquisa, en febrero y marzo de ese año se le tomaron dos declaraciones juradas al Sr. Carlos Cintrón Jácome (en adelante "el demandante-recurrido" o "Sr. Cintrón Jácome"). Este último ocupaba el cargo de reparador de equipo militar en el referido cuerpo.

En ambas ocasiones, el demandante-recurrido negó tener conocimiento sobre lo que se le preguntaba. Sin embargo, el 15 de marzo de 1996 éste ofreció una tercera declaración jurada, en la cual relató los incidentes referentes a la desaparición del vehículo y su participación en los hechos.

Como resultado de la investigación, el 19 de agosto de 1996 la Guardia Nacional notificó al demandante-recurrido, mediante carta firmada por el Coronel Francisco A. Márquez,[4] que se proponía tomar acción disciplinaria en su contra. Se le informó que se le formularían cargos por mutilación de propiedad del gobierno federal, uso indebido de ésta, y por deliberadamente ofrecer declaraciones juradas falsas. Además, se le advirtió que tenía derecho a estudiar toda la prueba relacionada a su caso y a recibir explicaciones adicionales sobre la acción propuesta.

---

[4] Para ese entonces, el Coronel Márquez ocupaba el puesto de "Surface Maintenence Manager" de la Guardia Nacional.

Luego de ofrecérsele una oportunidad para expresar por escrito su posición respecto a los cargos imputados, el 18 de noviembre de 1996, mediante memorando suscrito por el Coronel Carlos A. Córdova, la Guardia Nacional notificó al demandante-recurrido que sería despedido de su puesto como reparador de equipo pesado en este cuerpo militar. La notificación advertía, además, sobre los procedimientos mediante los cuales podría apelar esta decisión.[5]

---

[5] Anejo a esta notificación, la Guardia Nacional incluyó un documento intitulado *Adverse Action Appeal Rights-Original Decision*, el cual expresa:

> If you consider this adverse action improper, you may appeal the decision by requesting an appellate review by the Adjutant General or an administrative hearing but not both. The appellate review involves an overall review of the official adverse action case file maintained in the Human Resources Office (HRO), together with any additional information you may provide. An administrative hearing affords you the opportunity to have a National Guard Hearing Examiner gather all available facts through an administrative hearing and then provide findings and recommendations to the Adjutant General who will then issue the appellate decision. Should you elect to appeal the decision, you have the right to be represented by an attorney or other representative of your choosing.
>
> ....

continúa...

... 2 continuación

Así las cosas, el 25 de agosto de 1997 el Sr. Cintrón Jácome presentó una demanda ante el Tribunal de Primera Instancia, Sala Superior de Ponce (en adelante, "TPI"), al amparo de la Regla 59 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 59, y la Ley Federal de Derechos Civiles, 42 U.S.C. § 1983. La misma fue presentada contra el Estado Libre Asociado de Puerto Rico, la Guardia Nacional, y el General Emilio Díaz Colón (en adelante, "los demandados-peticionarios"), solicitando interdicto permanente, sentencia declaratoria y daños y perjuicios. En síntesis, alegó que dado que era un miembro reconocido y activo del Partido Popular Democrático, había sido despedido por motivaciones claramente político-partidistas, ya que el General Emilio Díaz Colón era miembro reconocido del Partido Nuevo Progresista. Los demandados-peticionarios contestaron la demanda negando las alegaciones relacionadas al despido.

Luego de varios trámites procesales, el 11 de agosto de 1998, los demandados-peticionarios solicitaron al TPI que dictara sentencia sumaria a su favor, basándose en los

---

The Adjutant General will render the appellate decision as soon as possible after the appellate review has concluded or after review of the hearing examiner´s report and recommendation. An appellate decision by the Adjutant General will cancel the adverse action , sustain it, or substitute a less severe penalty. The right to appeal extends no further than the Adjutant General of Puerto Rico. *Véase* Apéndice, a la pág. 75.

siguientes argumentos: 1) que éste carecía de jurisdicción sobre la materia, 2) falta de agotamiento de remedios administrativos, 3) falta de una causa de acción que justificara la concesión de un remedio, y 4) falta de parte indispensable.

En esencia, los demandados-peticionarios trajeron a la atención del TPI la situación del demandante-recurrido como empleado federal, alegando en consecuencia que tenía que acumularse como parte al Gobierno de Estados Unidos. Igualmente, apuntaron a que sus labores como técnico de la Guardia Nacional eran incidentales al servicio militar y, por tanto, no justiciables en cualquier foro civil.

El 15 de noviembre de 1999, se celebró una vista evidenciaria en la cual se presentó como único testigo al Sr. Juan Marrero, quien en ese momento fungía como Oficial de Personal Federal de la Guardia Nacional. En su testimonio, Marrero explicó que, a tenor con el "National Guard Technicians Act", 32 U.S.C. § 709,[6] el recurrido era empleado del Ejército de Estados Unidos.

_____

[6] Esta ley dispone lo siguiente:

§ 709. Technicians: employment, use, status

(a)     Under regulations prescribed by the Department of the Army...persons may be employed as technicians in

(1) the administration and training of the National Guard....
(2) the maintenance and repair of supplies issued to the National Guard or the Armed Forces.

El 15 de diciembre de 1999, el TPI dictó sentencia sumaria a favor de los demandados-peticionarios. Dicho foro expresó que éstos habían probado satisfactoriamente que el Sr. Cintrón Jácome era un empleado federal y que éste no había provisto evidencia en contrario. También resolvió que carecía de jurisdicción sobre la materia, ya que la facultad del Ayudante General de la Guardia Nacional para contratar y despedir al recurrido emanaba de normas federales.

El Sr. Cintrón Jácome solicitó reconsideración, la cual fue denegada el 21 de enero de 2000. Luego, el 15 de febrero de 2000, éste presentó apelación ante el Tribunal de Circuito de Apelaciones (en adelante, "TCA"). Mediante sentencia emitida el 29 de junio de 2001, el TCA resolvió que el foro estatal tenía jurisdicción sobre la materia, basándose en nuestra decisión en *Roberts v. USO Council of P.R.*, 145 D.P.R. 58 (1998). En consecuencia, revocó al foro de instancia y le devolvió el caso para la continuación de los procedimientos.

Inconformes, los peticionarios recurren ante este Tribunal, y señalan lo siguiente:

....

continúa...
... 3 continuación

(d) A technician employed under subsection (a) is an employee of the Department of the Army or the Department of the Air Force as the case may be, *and an employee of the United States*.(énfasis suplido).

**A. Erró el Honorable Tribunal de Circuito de Apelaciones al determinar que el Tribunal de Instancia tiene jurisdicción para adjudicar la causa de acción de autos[,] en contravención a la doctrina del Tribunal Supremo de los Estados Unidos que prohíbe las causas de acción contra oficiales militares que surgen en el curso del servicio militar rendido.**

Expedimos auto de *Certiorari* mediante Resolución de 14 de diciembre de 2001. Entendemos que el error señalado se cometió. Veamos.

II

**A. Ausencia de causa de acción en reclamaciones intramilitares por daños incidentales al servicio: Doctrina *Feres***

En el año 1950, el Tribunal Supremo de Estados Unidos resolvió el normativo caso de *Feres v. United States*, 340 U.S. 135 (1950). En esa ocasión, el Supremo Federal tuvo ante su consideración una demanda incoada por unos soldados bajo el *Federal Tort Claims Act* (en adelante "FTCA"), 28 U.S.C. §§ 1346(b)(1), 2671-2680, por alegados daños causados a éstos dentro del ámbito de la actividad militar. El Tribunal Supremo resolvió que el gobierno federal no está sujeto a demandas bajo la FTCA por daños ocurridos a empleados militares en actos incidentales al servicio militar.

Fundamentó su decisión en dos argumentos principales. Primero, que las disposiciones de la FTCA son inconsistentes con la naturaleza única de la relación entre

el gobierno y las Fuerzas Armadas. *Id.*, a las págs. 142–143. Segundo, explicando que el Congreso, al aprobar la referida ley, no creó nuevas causas de acción, sino que meramente extendió responsabilidad al gobierno federal bajo circunstancias que conllevarían responsabilidad privada. *Id.*, a la pág. 141. Por tanto, al considerar que bajo los hechos en controversia no existiría una causa de acción contra una persona privada, estimó el Tribunal que tampoco la había contra el gobierno.[7]

El alcance de la doctrina tomó un giro importante varias décadas después con el caso *Chappell v. Wallace*, 462 U.S. 296 (1983). En *Chappell*, el Supremo Federal entendió en un reclamo de tipo *Bivens*[8] por discrimen racial dentro del ámbito del servicio militar, instado por cinco oficiales no comisionados ("enlisted personnel") de la

---

[7] Se expresó el Supremo Federal de la siguiente manera:

> [o]ne obvious shortcoming in these claims is that plaintiffs can point to no liability of a "private individual" even remotely analogous to that which they are asserting against the United States...Nor is there any liability "under like circumstances," for no private individual has power to conscript or mobilize a private army with such authorities over persons as the Government vests in echelons of command. *Feres v. U.S.*, *supra*, a las págs. 141–142.

[8] *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). Este caso resuelve que una violación de derechos constitucionales por parte de funcionarios federales puede dar lugar a una acción en daños contra estos, aun en ausencia de una ley que autorice tal remedio.

Marina de Estados Unidos. Basándose en el razonamiento de *Feres*, *supra*, el Tribunal resolvió que el personal militar no tiene derecho a una causa de acción en daños contra sus superiores. *Chappell*, *supra*, a la pág. 300. Al así concluir, de forma unánime, expresó el Supremo federal que ***esta prohibición responde a la estructura única que rige las fuerzas armadas y la injerencia exclusiva del Congreso en el campo militar***. *Id.*, a la pág. 301. Además, tomó en consideración el hecho de que el Congreso ha legislado para establecer sistemas de compensación por muerte y accidente, así como procedimientos de quejas y agravios internos disponibles al personal militar. Para sustentar lo anterior, hizo alusión al "Uniform Code of Military Justice", 10 U.S.C. § 938,[9] y a la sección 1552 del título 10 del U.S. Code, la cual crea una comisión para atender quejas presentadas por miembros de las fuerzas armadas, y le otorga facultades para ordenar promociones de rango y el pago de sueldos de manera retroactiva.

---

[9] § 938. Art. 138. Complaints of wrongs

Any member of the armed forces who believes himself wronged by his commanding officer, and who, upon due application to that commanding officer, is refused redress, may complain to any superior commissioned officer, who shall forward the complaint to the officer exercising general court-martial jurisdiction over the officer against whom it is made. The officer exercising general court-martial jurisdiction shall examine into the complaint and take proper measures for redressing the wrong complained of; and he shall, as soon as possible, send to the Secretary concerned a true statement of that complaint, with the proceedings had thereon.

Posteriormente, con la decisión de *United States v. Stanley*, 483 U.S. 296 (1987), la doctrina *Feres* se concretó y definió de modo decisivo. En este caso, un militar retirado demandó al gobierno por los daños que le ocasionó el habérsele administrado la droga LSD, sin su conocimiento o consentimiento, como parte de un experimento llevado a cabo por el Ejército. El máximo foro federal expidió el recurso por entender que debía aclarar su decisión en *Chappell*, ya que la confusión imperante al respecto había producido resultados inconsistentes entre diferentes tribunales de circuito. *U.S. v. Stanley*, *supra*, a la pág. 676.

Así pues, con esta opinión el Tribunal Supremo de Estados Unidos aprovechó para armonizar a *Feres* con su progenie, aclarando que la relación oficial-subordinado no es el fundamento crucial de la doctrina, sino el aspecto de "incidental al servicio militar." *U.S. v. Stanley*, *supra*, a la pág. 680.[10]

Asimismo, la decisión no consideró determinante la ley bajo la cual se reclaman los remedios, redondeando la doctrina a base de la prohibición de causas de acción **en daños** que surjan de actos "incidentales al servicio

[10] Establece *Stanley*, *supra*, a la pág. 680, que "since *Feres* did not consider the officer-subordinate relationship crucial, **but established instead an 'incident to service' test**, it is plain that our reasoning in *Chappell* does not support the distinction Stanley would rely on." (énfasis suplido).

militar."[11] Explicó el Tribunal que, dado que la Constitución otorga jurisdicción exclusiva al Congreso para reglamentar los asuntos de disciplina militar, la intrusión judicial en esos menesteres sería inapropiada. Al analizar el texto de la Constitución, ese alto foro expresó:

> [w]hat is distinctive here is the specificity of that technically superfluous grant of power, and the insistence (evident from the number of Clauses devoted to the subject) with which ***the Constitution confers authority over the Army, Navy, <u>and militia upon de political branches</u>***. All this counsels hesitation in our creation of ***<u>damages remedies</u>*** in this field. *U.S. v. Stanley*, supra, a la pág. 682 (énfasis suplido).

Así pues, la conclusión que puede colegirse de *Feres*, *Chappell*, y *Stanley*, leídos en conjunto, es que se prohíbe

---

[11] A pesar de que los casos que la Corte citó para ilustrar la inconsistencia en la doctrina se resolvieron a base de diferentes leyes, la mayoría en *Stanley*, *supra*, no fundamenta su *ratio decidendi* a base de ley específica. Es decir, no auscultó los propósitos y

continúa...
... continuación

peculiaridades de la ley bajo la cual se reclamaba para así concluir que las acciones en daños incidentales al servicio militar no se permitían específicamente bajo esa fuente legal.

Los casos que citó la opinión para señalar la inconsistencia de los tribunales de circuito fueron los siguientes: *Jorden v. National Guard Bureau*, 799 F.2d 99 (3rd Cir. 1986) (caso al amparo de 42 U.S.C. § 1983); *Trerice v. Summons*, 755 F.2d 1081 (4th Cir. 1985)(42 U.S.C. §§ 1985, 1986); *Mollnow v. Carlton*, 716 F.2d 627 (9th Cir. 1983) (*Bivens* y 42 U.S.C. §§ 1985, 1986); y *Gaspard v. U.S.*, 713 F.2d 1097 (5th Cir. 1983)(*Bivens* y "FTCA"). *Véase Stanley*, *supra*, a la pág. 676.

toda causa de acción en daños que surja de actos incidentales al servicio militar, independientemente de la relación entre las partes en controversia. Ello toda vez que, los tribunales civiles deben prestar deferencia a las decisiones militares, dada la peculiaridad de su estructura y disciplina.

Por tanto, el asunto medular del caso de autos es determinar si los daños que alega el demandante-recurrido ocurrieron dentro del ámbito del servicio militar, para de ese modo dilucidar propiamente si éste tiene una causa de acción disponible.

**B. Extensión de la doctrina *Feres* a casos dentro del contexto del servicio civil en la Guardia Nacional**

La figura de la Guardia Nacional se encuentra reglamentada expresamente en el texto de la Segunda Enmienda a la Constitución de Estados Unidos,[12] a través de su precursor histórico: la "milicia".[13] Según el profesor Tribe, la llamada "cláusula de la milicia" tiene el propósito de preservar la autonomía estatal sobre la Guardia Nacional. Véase Laurence H. Tribe, *American Constitutional Law* 900 (3d. Ed. 2000). Por tal razón, se

---

[12] Siendo necesaria para la seguridad de un Estado libre una milicia bien organizada, no se coartará el derecho del pueblo a tener y portar armas. Const. E.U.A., Enm. II.

[13] *Véase* E. Roy Hawkins, *The Justiciability of Claims Brought by National Guardsmen Under the Civil Rights Statutes for Injuries Suffered in the Course of Military Service*, 125 Mil. L. Rev. 99, 102 (1989).

tiende a caracterizar a la Guardia Nacional como una entidad completamente estatal.

Sin embargo, a pesar de que parte de la responsabilidad sobre este cuerpo militar es providencia de los estados, la Constitución federal confiere al Congreso control exclusivo sobre ciertos aspectos de su funcionamiento. De este modo, la Constitución federal dispone:

> El Congreso tendrá facultad:... Para dictar reglas para llamar la milicia a fin de hacer cumplir las leyes de la Unión, sofocar insurrecciones y repeler invasiones; ***Para proveer para la organización, armamento y <u>disciplina de la milicia</u> y el gobierno de aquella parte de ella que estuviere al servicio de los Estados Unidos***, reservando a los estados respectivos el nombramiento de los oficiales y la autoridad para adiestrar a la milicia ***de acuerdo con la disciplina prescrita por el Congreso***. Const. E.U.A., Art. I, § 8, cls. 15,16 (énfasis suplido).

Como se puede observar, la Guardia Nacional es una agencia híbrida estatal y federal. Mientras que lo pertinente a asuntos administrativos tales como el nombramiento de oficiales y el entrenamiento de éstos es responsabilidad estatal, el prescribir normas para reglamentar todo lo referente a los procesos disciplinarios de las tropas es materia exclusiva del Congreso.[14] Esta

---

[14] Al amparo de esta autoridad, el Congreso ha aprobado legislación con el propósito de prescribir normas de disciplina en la Guardia Nacional, además de crear el "National Guard Bureau", cuerpo adjunto a los Departamentos del Ejército y de la Fuerza Aérea, cuya responsabilidad principal es el asegurarse de que la Guardia Nacional de cada estado o territorio cumpla con la reglamentación

jurisdicción exclusiva se explica por la peculiaridad de la relación oficial-subordinado, y los efectos perniciosos que podrían resultar si se permitiera a los tribunales involucrarse en asuntos de disciplina militar. E. Roy Hawkins, *supra*, a la pág. 109.

Igualmente, el carácter "sui generis" de los empleados de la Guardia Nacional refleja esta hibridez. La Guardia Nacional combina personal militar y civil. Los empleados civiles se conocen comúnmente como "técnicos" o "technicians", término que surge directamente del *National Guard Technicians Act*, *supra*.[15] Sin embargo, aunque las funciones del personal civil corresponden a las de cualquier empleado civil en otra organización estatal o privada, su función se da en el particular contexto militar. De hecho, se ha resuelto que el trabajo de un técnico de la Guardia Nacional es una combinación de militar y civil, pero que estos dos aspectos del trabajo ***son inseparables***. *Wright v. Park*, 5 F.3d. 586, 589 (1st Cir. 1993)(énfasis suplido). Además, estos técnicos tienen que simultáneamente ser miembros de la Guardia Nacional en el rango especificado por el Secretario de la rama militar pertinente. 32 U.S.C. § 709 (b).

Por ende, dado el carácter "inseparable" de las funciones civiles y militares de estos técnicos, las funciones de estos empleados civiles de la Guardia Nacional

---

federal referente a la disciplina y preparación de las tropas. *Véase* 10 U.S.C. §§ 10501 *et seq*.

son incidentales al servicio militar, y como tal, cubiertas por la doctrina resultante de *Feres*, *Chappell* y *Stanley*.

A esos efectos, nos parece ilustrativo el citado caso de *Wright v. Park*, *supra*. En *Wright*, la Corte de Apelaciones de Estados Unidos para el Primer Circuito, atendió precisamente la controversia ante nuestra consideración: la procedencia de una acción de daños y perjuicios por alegada violación a los derechos civiles contra oficiales militares superiores, por una persona empleada con la Guardia Nacional a tenor de las disposiciones del *National Guard Technicians Act*, *supra*.

El Primer Circuito concluyó que la naturaleza dual pero indivisible del trabajo de los técnicos de la Guardia Nacional ***hacen que cualquier acción dirigida a la función civil del técnico sea una incidental al servicio militar, por lo que estaría proscrita por Feres y su progenie.***[16]

---

[15] 32 U.S.C. § 709. Este estatuto proveyó específicamente para que este personal se considere como empleados federales. *Véase* escolio 3, *supra*.

[16] Explicó dicho foro:

> While a technician´s job is a composite containing both civilian and military pieces, the job´s dual aspects are inseparable; they are like Chang and Eng joined at the chest.
>
> ....
>
> Since a technician´s dual roles are too tightly imbricated to be pried apart at a litigant´s whim, appellant necessarily suffered the injury of which he complains in his military capacity. *Wright*, supra, a las págs. 589,591.

A base de este estado de Derecho, procedemos a dilucidar la controversia de autos.

III

La controversia de autos se suscitó mientras el demandante-recurrido se desempeñaba como "técnico" de la Guardia Nacional de Puerto Rico, cuerpo militar del cual era miembro enlistado. Además, las labores que éste realizaba, y de las cuales surgen los actos que dan base a la reclamación de autos, eran incidentales a su membresía en dicho cuerpo, tanto por su naturaleza como por la forma en que están descritas en la ley que las crea.[17] De igual modo, el proceso disciplinario al que el demandante-recurrido fue sometido se produjo dentro de la cadena de mando inherente a la actividad militar. Así pues, entendemos que en ausencia de un mandato legislativo en contrario, no existe base racional para no extender al caso de autos los postulados de la doctrina *Feres*.

Ciertamente, en el presente caso está presente la premisa básica que sustenta a *Feres* y su progenie, entiéndase, ***la no intervención de los tribunales con asuntos incidentales a la actividad militar dada la singularidad de la estructura y la disciplina de las fuerzas armadas***. Este postulado es tan fundamental que el Tribunal Supremo de Estados Unidos ha aplicado la doctrina *Feres* indistintamente de la ley por la cual se reclama, y

---

[17] *Véase* escolio 3, *supra*.

de la identidad y relación entre las partes en controversia.[18]

Por consiguiente, sostenemos que la Guardia Nacional es un cuerpo militar cuya jurisdicción disciplinaria recae exclusivamente sobre el Congreso, no diferenciándose en esto de las ramas militares tradicionales. Similarmente, la capacidad en que se emplean los técnicos de este cuerpo, a pesar de ser híbrida, es preponderantemente militar, y por ello los actos de estos empleados se consideran incidentales al servicio militar. Por tanto, aplicaríamos al caso de autos la doctrina *Feres*.

Por el contrario, la opinión mayoritaria se centra en discutir la presunción de jurisdicción concurrente de los tribunales estatales y federales para atender casos surgidos al amparo del derecho federal. Explica además que la excepción a este principio es que haya una determinación expresa en contrario por parte del Congreso, o que el Tribunal Supremo Federal lo haya declarado así cuando entienda que la intención del Congreso a esos efectos es palmariamente clara. Así, concluye que ninguna de esas dos circunstancias ocurren en el caso de autos, por lo que podemos entender en el caso de marras. No estamos de acuerdo.

El presente recurso no requiere que determinemos a qué foro le corresponde atender el caso, sino determinar si

---

[18] Recordemos que *Stanley*, *supra*, aclaró que el elemento fundamental de la doctrina *Feres* es que el daño por el cual se reclama sea uno incidental

existe una causa de acción en daños a favor del demandante-recurrido. En relación con la controversia que nos atañe, el máximo foro federal resolvió clara y expresamente la inexistencia de causas de acción por daños y perjuicios dimanantes de actos ocurridos dentro del ámbito militar ("incident to military service"). *U.S. v. Stanley*, *supra*, a las págs. 680-681; *Chappell v. Wallace*, supra, a la pág. 300. A esos efectos, el Supremo Federal expresó que la razón para dicha postura responde a que:

> [c]enturies of experience have developed a hierarchical structure of discipline and obedience to command, unique in its application to the military establishment and wholly different from civilian patterns. ***Civilian courts must, at the very least, hesitate long before entertaining a suit which asks the court to tamper with the established relationship between enlisted military personnel and their superior officers***; that relationship is at the heart of the necessarily unique structure of the Military Establishment. *Chappell v. Wallace*, supra, a la pág. 300. (énfasis suplido).

Por tanto, la discusión de si debe ser el foro federal o el estatal el que atienda el caso es irrelevante, ya que lo que ha resuelto el Tribunal Supremo Federal es que las controversias por daños incidentales al servicio militar se tienen que resolver dentro de las estructuras de justicia militar pertinentes, de acuerdo a la reglamentación que el Congreso, como cuerpo con jurisdicción exclusiva para reglamentar la disciplina de la Guardia Nacional, apruebe

---

al servicio militar, y no la identidad o la

al respecto. Así pues, no existen causas de acción por actos de esa naturaleza en los tribunales civiles.

Del mismo modo, la mayoría expresa que el Tribunal Supremo de Estados Unidos no se ha expresado en torno a acciones como la de autos, caracterizando la controversia ante nos como una entre un "mero empleado de la Guardia Nacional" y el E.L.A. Reiteramos que esa no es la controversia medular del caso.[19] A la luz de *Stanley*, *supra*, el asunto jurisdiccional de umbral es determinar si la controversia surge de hechos incidentales al servicio militar. En consecuencia, la pregunta de rigor para los tribunales al evaluar la existencia de una causa de acción en asuntos como el de autos no es ¿cúales son las partes en controversia?, o ¿bajo el palio de que ley surge la causa de acción?; sino, ¿es la controversia incidental al servicio militar?

Por ende, al resolver como lo hizo, la mayoría al menos debió explicar por qué entiende que los hechos en controversia no se suscitaron dentro del ámbito militar.[20]

---

capacidad de las partes.

[19] Expresó la mayoría en *Stanley*, *supra*, a la pág. 684, que:

> [t]he availability of a damages action under the Constitution for particular *injuries* (those incurred in the course of military service) is a question logically distinct from immunity to such an action on the part of particular *defendants*. (énfasis en el original).

[20] Los tribunales han aplicado este estándar liberalmente. Por ejemplo, el máximo foro federal ha extendido la doctrina a casos en que los demandantes eran personas no militares subrogadas

Más importante aún, debió explicar por qué entiende que debemos separarnos de lo establecido por el más alto foro federal, en el sentido de que no se fomenta que los tribunales civiles entren a evaluar la sabiduría de las decisiones tomadas dentro de la esfera militar, dada la peculiar naturaleza y estructura disciplinaria de las fuerzas armadas.[21]

---

en los derechos de militares, *Stencel Aero Engineering Corp. v. United States*, 431 U.S. 666 (1977); a reclamaciones por personal militar franco de servicio al momento de sufrir los daños, *United States v. Shearer*, 473 U.S. 52 (1985); y a reclamaciones de empleados militares por daños causados por empleados federales no militares, *United States v. Johnson*, 481 U.S. 681 (1987).

[21] Además de *Feres* y su progenie, que se limita a pautar la ausencia de causas de acción por daños ocasionados dentro del ámbito del servicio militar, el Tribunal Supremo federal resolvió *Gilligan v. Morgan*, 413 U.S. 1 (1973). En ese caso, se cuestionó si el poder congresional sobre la milicia se socavaría de permitírsele a una corte de distrito federal examinar el patrón de entrenamiento, de armamento y órdenes en general de la Guardia Nacional, para así determinar si éste fue apropiado a la luz de unos hechos específicos. Resolviendo en la afirmativa, el Supremo federal expresó:

It would be difficult to think of a clearer example of the type of governmental action that was intended by the Constitution to be left to the political branches directly responsible—as the Judicial Branch is not-- to the electoral process. ***Moreover, it is difficult to conceive of an area of governmental activity in which the courts have less competence.*** The complex, subtle, and professional decisions as to the composition, training, equipping, and control of the military force are essentially professional military judgments, subject always to civilian

continúa...
... 18 continuación

IV

En conclusión, sostenemos que si bien el TPI, ante los hechos del caso de epígrafe, concluyó correctamente que carecía de autoridad para adjudicar daños sobre el despido del demandante recurrido, se fundamentó equivocadamente en que el foro estatal no tiene jurisdicción para dilucidar asuntos en que son de aplicación leyes y jurisprudencia federal.

De igual modo, el TCA correctamente revocó este pronunciamiento del TPI al resolver que, como regla general, los tribunales de Puerto Rico pueden dilucidar y adjudicar controversias tomando como base el derecho federal. Sin embargo, tanto dicho foro como la mayoría de este Tribunal se equivocan al concluir que existe una causa de acción en los tribunales estatales por daños incidentales al servicio militar, sin considerar la doctrina *Feres,* explicada detalladamente en esta opinión. Al así decidir, obviaron que es mediante los procedimientos internos de justicia militar establecidos por el Congreso para reglamentar el quehacer de las tropas, que un empleado militar puede reclamar daños y perjuicios contra sus superiores.

Por no resolver de este modo la mayoría, disentimos.


BALTASAR CORRADA DEL RÍO
JUEZ ASOCIADO

---

control of the Legislative and Executive Branches. *Id.,* a la pág. 10 (énfasis suplido).